391 So.2d 1005 (1980)
L. B. BANKSTON
v.
STATE of Mississippi.
No. 52316.
Supreme Court of Mississippi.
December 17, 1980.
Stephen S. Cooke, Grenada, for appellant.
*1006 Bill Allain, Atty. Gen. by Wayne Snuggs, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before SMITH, SUGG and LEE, JJ.
SMITH, Presiding Justice:
L.B. Bankston was indicted for the crime of armed robbery. He was tried on that charge in the Circuit Court of Grenada County, convicted, and sentenced to serve a term of thirty years imprisonment.
On appeal he has assigned the following grounds for reversal:
(1) Failure of the trial court to sustain appellant's motion to suppress his identification by the victim;
(2) Allowing testimony on redirect examination of a witness upon a matter not brought out on cross-examination;
(3) The evidence was insufficient to support the verdict of the jury and appellant's motion for a directed verdict should have been granted; and
(4) The sentence of thirty years imprisonment, without parole, was excessive, arbitrary, capricious and violative of the Constitution of the United States and the law of the State of Mississippi.
At about 1:30 in the morning of January 9, 1980, Dhirubha Desai, desk clerk of the Parkview Motel in Grenada, was on duty. A man entered the motel and inquired of Desai whether the driver of a white pickup truck which was parked outside had checked into the motel. As Desai moved to check the register a second man entered, approximately a minute after the first. This second man had a mask over his face and was carrying a shotgun. At this time the man who had first entered pulled his cap down into a face mask, took the gun and led Desai into another room while the second man took the money from the cash box. This man also took Desai's wallet. The amount taken from the cash box was $258.00 and that in Desai's wallet was $25.00.
Desai described the man who had entered the motel first as having worn a light brown jacket, cream colored pants and as having a mustache. Afterward, Desai identified Bankston as this man who had held the gun on him during the robbery.
The robbery completed, the robbers fled on foot. The police were summoned and when they arrived found a ski mask and a loaded sawed-off shotgun near the motel. Approximately an hour after the robbery, a Grenada policeman saw Bankston at a taxicab stand about three blocks from the motel. This policeman had seen Bankston two days earlier and at that time, the policeman said, Bankston was wearing his customary mustache. However, when seen by the policeman the morning after the robbery Bankston no longer had the mustache but the policeman observed that Bankston's skin was light around his mouth and under his chin as if it had been fresh shaven. A taxicab driver also had seen Bankston earlier in the day which preceded the robbery and at that time Bankston had his mustache. The cab driver testified that when he saw Bankston after the time of the robbery the mustache had been shaved off.
The day after the robbery, the chief of police presented four photographs (including a photograph of Bankston) to Desai for possible identification of the robber. Although there were four photographs, only three people were depicted. The third and fourth photographs were of the same person which was not Bankston. Immediately upon seeing the photograph of Bankston, Desai identified him as the robber.
About a week after the robbery, Desai was asked to inspect a lineup for possible identification of the robbers and at this time Desai again identified Bankston as the robber who had held the shotgun on him while the robbery was being committed. Bankston was arrested on January 10, 1980.
Bankston was indicted for the crime and prior to trial there was an evidentiary hearing on Bankston's motion to suppress certain evidence. Bankston contended that he had not been afforded counsel prior to the lineup, that the method of identification from photographs was unnecessarily suggestive and that the lineup had been unconstitutionally conducted. At the conclusion *1007 of the hearing on the motion it was denied by the trial judge.
Under the proposition presented on appeal it is Bankston's contention that his right to counsel under the sixth amendment to the United States Constitution was violated at the lineup conducted by the police department, and, therefore, his in-court identification by Desai should have been suppressed. In the case of United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967) and its companion case, Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967) the United States Supreme Court held that a pretrial corporeal identification conducted after a suspect was indicted was a critical stage in a criminal prosecution to which the sixth amendment right to counsel applied. In Kirby v. Illinois, 406 U.S. 682, 689, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972), the Court made it clear that the right to counsel attaches only "at or after the initiation of adversary judicial criminal proceedings, whether by way of formal charge, preliminary hearing, indictment, information, or arraignment." Appellant cites Moore v. Illinois, 434 U.S. 220, 98 S.Ct. 458, 54 L.Ed.2d 424 (1977), as supporting his contention that he should have been afforded counsel in his preindictment lineup. Moore, however, applied the Wade-Kirby standards and held that the defendant should have been afforded counsel at a preliminary hearing where he was identified by the victim. Moore made no change in the previously announced rule that representation by counsel is not required at a preindictment investigatory lineup.
This Court has held consistently that the right to counsel does not extend to preindictment lineups. Scott v. State, 359 So.2d 1355 (Miss. 1978); Fells v. State, 345 So.2d 618 (Miss. 1977); Cox v. State, 326 So.2d 794 (Miss. 1976).
Based upon the above authorities we have concluded that Bankston was not entitled to representation by counsel at the preindictment lineup in this case.
It is next argued by appellant that the procedure at both the photograph identification and at the lineup was so impermissibly suggestive that it violated Bankston's right to due process of law.
He argues that (1) the victim (Desai) was shown police mug shots with their police markings the day after the robbery, (2) of the three men depicted in the photographs only he had a mustache and the mustache was one of the characteristics of the robber recalled by Desai, (3) the other two men in the photographs were much younger than Bankston. Bankston also made the following criticisms of the lineup procedure: (1) only one of the five men in the lineup was of comparable height with the appellant and (2) the police had suggested to Desai that Bankston had been the robber.
In an effort to minimize the risk of erroneous identification of a suspect prior to trial, the Supreme Court of the United States has laid down certain guidelines by which the identification procedure is to be tested, holding that a charge of impermissible suggestiveness must be supported by the "totality of the circumstances" in each case. Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967).
An examination of the photographs of the lineup in the present case shows that the five other men in it were of reasonably comparable height to Bankston. His second objection, that the police told Desai that he was the robber, is not borne out by the record. The officers who investigated the crime repeatedly testified that they had made no such suggestion to Desai and Desai himself said the police had told him nothing.
In Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968), the United States Supreme Court dealt with risks inherent in pretrial photographic identification. Although recognizing that a suggestive pretrial identification might lead to a misidentification of a suspect that would be adhered to throughout his trial, the Court recognized that such methods of identification enjoy wide and effective use by police and declined to bar their use. The Court held that a pretrial identification by *1008 photographs will be set aside "only if the photographic procedure is so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." (390 U.S. at 384, 88 S.Ct. at 967, 19 L.Ed.2d at 1247).
The defendant was the only one of the three men depicted in the photographs who had a mustache. The victim specifically remembered the robber had a mustache. Courts which have considered the question of whether the defendant was prejudiced by photographs where he was the only one depicted with a distinctive feature, have decided that such action is impermissibly suggestive. United States v. Keller, 512 F.2d 182 (3rd Cir.1975), (identification of defendant who was blonde, age fifty, and wore glasses from among photographs of younger women, with dark hair and not wearing glasses); People v. Carter, 46 Cal. App.3d 260, 120 Cal. Rptr. 181 (1975), (defendant was the only person depicted in photographs wearing turtleneck sweater which was sole item of clothing victim recalled from robbery); State v. McBain, 24 Or. App. 737, 547 P.2d 188 (1976), (defendant's photograph was only one of nine photographs which depicted darkly bearded, heavy set man, where victim had described her assailant as darkly bearded and heavy set). We have found, therefore, that showing the victim only one photograph of a man with a mustache when a mustache was one of the features of the robber recalled by the victim was impermissibly suggestive.
In Neil v. Biggers, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972), the United States Supreme Court held that even if the pretrial identification procedure had been unnecessarily suggestive the identification did not have to be excluded if upon consideration of the totality of the circumstances there was no substantial likelihood of misidentification. The Court set out five factors to be used in analyzing the totality of circumstances. These factors include:
(1) The opportunity of the witness to view the criminal at the time of the crime;
(2) The witness's degree of attention;
(3) The accuracy of his prior description of the criminal;
(4) The level of certainty demonstrated at the confrontation; and
(5) The time between the crime and the confrontation.
(432 U.S. at 110-14, 97 S.Ct. at 2250-53, 53 L.Ed.2d at 151, 153, 154).
This Court applied the Neil tests in Stewart v. State, 377 So.2d 1067 (Miss. 1979) and Scott v. State, 359 So.2d 1355 (Miss. 1978). In each of those cases this Court found that the in-court identification of a defendant possessed the requisite degree of reliability despite suggestive pretrial identification.
Applying the Neil criteria to the totality of the circumstances in this case we find:
(1) Desai, the victim, testified that he saw the robber, full face, at a time when his face was not covered, for about a minute to a minute and a half from a distance of ten feet, in a brightly lighted room.
(2) The witness was the motel desk clerk (and victim) and it is logical that he would direct his full attention upon a person who entered the motel at such a late hour and engaged him in conversation, and the evidence so shows.
(3) After the robbery, the victim gave the following description of the robbers: One was approximately six feet two inches, weighed around 200 pounds and was wearing a brown coat, the other was tall, skinny and had on a long, big overcoat, bluish in color. It cannot be said that this description of the latter does not bear a real resemblance to the defendant.
(4) Desai made a positive in-court identification of Bankston.
(5) The record shows that Desai was shown the photographs only hours after the robbery and the lineup occurred only a week later.
From a consideration of all the above circumstances we are convinced that Desai's identification of Bankston as the robber who entered first, engaged him in conversation, with no mask on his face at the time, in a well lighted motel office, is entitled to *1009 great weight and it is not surprising that he was able to recognize Bankston's photograph the next day. The circumstances under which Desai faced the robber were such as to afford him an excellent opportunity to observe him and to impress his appearance upon his mind. Under the stated circumstances, Desai's in-court identification of Bankston possessed the required degree of reliability despite the suggestive photographic identification. We find no merit in Bankston's contention that the trial court's failure to suppress Desai's identification was error.

PROPOSITION NO. 2
During the course of the trial police officer Tilghman had testified for the prosecution and had been turned over to defense counsel for cross-examination. Defense counsel asked the witness: "In your experience as a police officer ... when a piece of physical evidence is sent down to the crime lab, isn't it true that they usually check for fingerprints?" When the cross-examination had been completed the district attorney took the witness on redirect at which time the following occurred:
BY MR. SNYDER:
Q. Mr. Tilghman, have you ever had any training or experience in the lifting of fingerprints?
A. Yes, sir, I have.
Q. What is your training and experience in that regard?
BY MR. COOKE:
Your Honor, I object to this line of questioning. It wasn't brought out on cross-examination.
BY MR. SNYDER:
He brought it out, Your Honor, checking for fingerprints.
BY THE COURT:
Yes, sir, I believe you did, Mr. Cooke. You opened the fingerprint question up.
BY MR. COOKE:
But as far as his qualification as to fingerprints, we did not open that up. All I asked was it his experience for him to check, his physical evidence checked.
Defense counsel then requested leave to further cross-examine the witness as to the above testimony brought out on redirect. This leave was granted and a brief further cross-examination of the witness by defense counsel occurred. Appellant's complaint is that it was error to allow the witness to give testimony on redirect not relative to the matter about which he had been cross-examined. We find no merit in this contention.

PROPOSITION NO. 3
Bankston asserts that his sentence of thirty years imprisonment without parole is unconstitutional. He acknowledges, however, that the 1980 session of the Mississippi legislature amended the statute which had not permitted parole to persons who had been convicted of armed robbery and had provided that such prisoners would be eligible for parole after serving ten years. Mississippi Code Annotated 47-7-3(d) (1972) was amended and became effective July 1, 1980.
In Harris v. State, 386 So.2d 393 (Miss. 1980), this Court declared the question to be moot because of the passage of the legislation above referred to. Bankston's eligibility for parole is a matter under the jurisdiction of the State Probation and Parole Board which must follow section 47-7-3(d) supra, as amended.
Finally, Bankston contends that the evidence was insufficient to support the verdict. An examination of the record clearly reflects that this contention is without merit.
The evidence of Bankston's guilt amply supports the jury's verdict. Bankston did not testify in his own behalf upon the trial and offered no witnesses.
A conviction will be upheld by this Court if it is based upon competent evidence. Gandy v. State, 373 So.2d 1042 (Miss. 1979), McLelland v. State, 204 So.2d 158 (Miss. 1967).
There being no merit in any of the matters assigned by Appellant as error his conviction and sentence must be affirmed.
AFFIRMED.
*1010 PATTERSON, C.J., ROBERTSON, P.J., and SUGG, WALKER, BROOM, LEE, BOWLING and COFER, JJ., concur.