451 So.2d 718 (1984)
Eddie Lee WILSON
v.
STATE of Mississippi.
No. 54826.
Supreme Court of Mississippi.
May 9, 1984.
*719 Carroll Rhodes, Hazlehurst, for appellant.
Bill Allain, Atty. Gen. by Frankie Walton White, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before PATTERSON, C.J., and BOWLING and DAN M. LEE, JJ.
PATTERSON, Chief Justice for the Court:
Eddie Lee Wilson was tried in the Circuit Court of Copiah County on a charge of attempted rape. The jury returned a verdict of guilty, and the court imposed a sentence of ten years in the custody of the Mississippi Department of Corrections.
Wilson appeals, assigning as error that the trial court:
I. Overruled defendant's motion to suppress his statement.
II. Refused to admit the entire medical record of the defendant.
III. Overruled defendant's motion to suppress identification testimony.
IV. Denied defendant's motion for mistrial when the state allegedly buttressed the in-court identification testimony of the prosecutrix.
V. Denied defendant's requested instructions.
VI. Granted the state's requested instructions.
Further, Wilson argues the verdict was against the overwhelming weight of the evidence and was the result of bias, prejudice and passion.
On December 30, 1977, two men entered a grocery store owned by the prosecutrix and her husband. The prosecutrix was alone in the store. Suddenly one of the men darted behind the counter where the prosecutrix was standing and grasped her arms from the back while his accomplice stood in front of the counter and pointed a gun at her. The assailant who was standing behind her then took the money from the cash register and put it into his pockets. He again seized the back of the prosecutrix's arms and led her to the back door of the store. She complied with his order to remove the bolt, and he forced her outside. She testified that at that point
... he turned and faced me and grabbed at me and said: "Don't you want to * * me?" and then took his hand and rammed it down in my pants and rammed his finger into my vagina. Then out the back, I was trying to kind of move a little bit and he would bring me back this way, then pull me back over *720 this way. Then he started taking me out toward my garden fence... .
She testified further,
He got over that fence and was trying to pull me through, and I caught that top barbed wire fence and I was just holding to it... . I did not want to be pulled through there. I did not know what he might do to me. I was hoping I would get a chance to get away. Well, in a few seconds, he did turn loose, and he went running all out through my garden. (R. 286-87)
Wilson and Wells were arrested in Claiborne County on Saturday, January 7, 1978.
Confined in the Copiah County Jail on charges of robbery and attempted rape, Wilson notified Sheriff Earl Guess on January 8 that he wished to give a statement. Wilson was then brought into the sheriff's office where Guess advised him of his Miranda rights. Having stated that he understood these rights, Wilson gave an oral statement in the presence of Guess and his secretary, Janice Pitts. Deputy Sheriff Thomas Way made intermittent appearances during the taking of the statement.
After Wilson concluded, Ms. Pitts typed the statement from her shorthand notes. Since Wilson professed difficulty reading, Guess read the statement to him. Wilson then signed the statement.
After a hearing on the issue, the court ruled the statement was freely and voluntarily given after the defendant had been advised of his constitutional rights and had made an effective waiver thereof. The motion to suppress was therefore overruled and the statement was admitted into evidence as set out below:
My name is Eddie Lee Wilson and I am 21 years old and I live at Rt. 2, Box 18, Patterson, MS. On December 30, I left Port Gibson with Lafayette Wells and Larry Appeleton and went to Barlow down 547 turned off at Thetford's Store. Then we went to Mr. Dixon's store and went up that lil ole road and by-pased the store twice and we stopped. Then Larry asked Lafayette what we were fixing to do and Lafayette said we fixing to hit the store. And Larry said wait just a minute. Larry said let me go up the road and turn around and come back to the store and get some gas and when we come back to the store Lafayette said lets go in the store and I went in and got a bag of Skins and she asked us did we want any gas and I told her no'm and I went back out and Lafayette nodded his head at me to go into the store and then when he nodded his head at me both of us went back in the store. When we went in the store, Lafayette had his hood down over his head in his mouth and said hold it lady, this is a holdup. So I say you better do what he says and she said what you want. Lafayette said the money. Lafayette said get the money man and she pulled the cash register open and then I said this all whats in the cash register. I got everything in the cash register and he say some more, some more. She say its in the third drawer and I pull the drawer open and get the money and Lafayette said lets go out the back way. I grabbed the lady going to the back. When I caught hold of her and she said what you fixing to do now? I say we going out the back way so when we got to the back door we went out the back. Me and her went around to the other side and I see somebody in a pickup and I run back on the on the other side and I looked and did not see anybody. Then so I broke through the fence and I was still pulling on her and I fell on the fence and then when I got up I was going through the fence and I turned her arm aloose. I went around 3 fences after then and came out into a road and Lafayette and Larry Appleton picked me up down the road by a church. We got back to Lafayette's house and split the money up. I got $430.00. When we split the money we went to a place called Tillman. And thats the way it happened. (R. 352-A & B)
Wilson now argues the court's ruling was error.
*721 The record shows Ms. Pitts, Deputy Way and Sheriff Guess testified that Wilson was not induced to make the statement by any threats, promises, coercion or abuse. Further, Deputy Sheriff Onnie Bell Sellers, who was called in to witness Wilson's signature, testified that no threats, promises, coercion or abuse were used to induce Wilson to sign the statement.
To rebut this evidence Wilson relies on the testimony of Dr. John Long, who stated Wilson came into his office on January 12 complaining of dizziness and headache. Dr. Long testified that Wilson told him he (Wilson) had been beaten at the jail the previous Sunday evening. Long admitted Wilson to the hospital and treated him for a contusion to the head and suspected skull fracture. By the time Wilson was discharged on January 19, Long's diagnosis had changed to "probable cerebral concussion but no skull fracture."
While this testimony may arouse some suspicion as to the cause of the injury, we emphasize there is absolutely no evidence connecting it with the statement given on January 8. Wilson had the opportunity to take the stand outside the presence of the jury and make that connection, yet he declined to do so. At the hearing on the motion to suppress the statement, the defense called only Dr. Long and therefore proved only that Wilson did sustain a head injury. To the contrary, Sheriff Guess testified a woman claiming to be Wilson's mother had come to the jail after Wilson's arrest and informed Guess that Wilson had suffered a head injury inflicted by a falling tree. We are of the opinion there is insufficient testimony to bridge the gap between the injury and the statement and to thereby rebut the testimony of the law enforcement officers and Ms. Pitts that Wilson was not coerced into making the statement. Any other holding would be rooted in mere conjecture in our opinion.
Wilson next argues the trial court improperly excluded from evidence those portions of his medical record which contained Wilson's assertions that his injuries were the result of a beating sustained at the jail.
In Shorter v. State, 257 So.2d 236, 240 (Miss. 1972), we held, "It is a general rule that declarations of a party in his own favor are not admissible in his behalf." The reason for this exclusion is stated in 2 Wharton's Criminal Evidence, § 303 (13th ed. 1972):
A declaration made by a defendant in his own favor, unless part of the res gestae or of a confession offered by the prosecution, is not admissible for the defense. A self-serving declaration is excluded because there is nothing to guarantee its testimonial trustworthiness. If such evidence were admissible, the door would be thrown open to obvious abuse: an accused could create evidence for himself by making statements in his favor for subsequent use at his trial to show his innocence.
We are of the opinion the statement by Wilson to Dr. Long that Wilson's injury was the result of a beating at the jail was a self-serving declaration and therefore properly excluded. In reaching this conclusion we are mindful of Cone v. State, 271 So.2d 453 (Miss. 1973), wherein we held the trial court improperly excluded certain statements made by the defendant before his arrest. However, that case turned on facts which are not present here.
In Cone, defendant was convicted for possession of marijuana after officers found contraband in the dormitory room defendant shared with Christopher Linkenhoker. At Cone's trial, the jury was not allowed to hear the following testimony of the dormitory proctor:
A. Well Jim [Cone] came to me one night and he asked if he could talk to me, and I said all right, and he said he thought Chris [Linkenhoker] might have had some form of drugs or narcotics in the room, and I said all right, then I'll talk to him; and in the meantime, it bugged me because it's part of my job to try not to let these things get in there, and I went and spoke with Mr. Oubre about it.

*722 271 So.2d at 455.
We reversed, stating, "We do not feel that the statement of Cone to McKay, the proctor of the second floor of Scott Hall, was a self-serving declaration within the usual and real meaning of that term. It was not a statement of Cone about himself or in his own interest." 271 So.2d at 455. We based this holding in part on the fact that at the time they were made, Cone's statements were not self-serving: we could not conceive that Cone would invite a search of his room while he prepared to deal in drugs from that room. In short, Cone's statements were made well before his arrest, well before he could have foreseen a need to fabricate evidence favorable to him. Therefore the "testimonial trustworthiness" rationale did not apply.
To the contrary, Wilson's statement to the doctor was made after Wilson's arrest, after he had made a confession. Unlike Cone's statement, Wilson's declaration was self-serving at the time it was made. We are therefore of the opinion it was properly excluded.
We next consider the overruling of Wilson's motion to suppress the lineup identification of Wilson by the prosecutrix. Wilson contends this was error for two reasons.
He first argues he was improperly denied counsel during the proceedings. We are of the opinion the following language from Bankston v. State, 391 So.2d 1005 (Miss. 1980), disposes of this contention:
... In the case of United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), and its companion case, Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967), the United States Supreme Court held that a pretrial corporeal identification conducted after a suspect was indicted was a critical stage in a criminal prosecution to which the sixth amendment right to counsel applied. In Kirby v. Illinois, 406 U.S. 682, 689, 92 S.Ct. 1877 [1882], 32 L.Ed.2d 411 (1972), the Court made it clear that the right to counsel attaches only "at or after the initiation of adversary judicial criminal proceedings, whether by way of formal charge, preliminary hearing, indictment, information, or arraignment." ...
This Court has held consistently that the right to counsel does not extend to preindictment lineups. Scott v. State, 359 So.2d 1355 (Miss. 1978); Fells v. State, 345 So.2d 618 (Miss. 1977); Cox v. State, 326 So.2d 794 (Miss. 1976).
391 So.2d at 1007.
Therefore the first prong of Wilson's argument is without merit.
Secondly, Wilson asserts the lineup procedure was suggestive and therefore led to an irreparably mistaken identification. He bases this argument on the fact that he (Wilson) was taller and darker complexioned than anyone else in the lineup and further, that he was the only man with a beard.
Again, we find the appropriate analysis in Bankston v. State:
In Neil v. Biggers, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972), the United States Supreme Court held that even if the pretrial identification procedure had been unnecessarily suggestive the identification did not have to be excluded if upon consideration of the totality of the circumstances there was no substantial likelihood of misidentification. The Court set out five factors to be used in analyzing the totality of circumstances. These factors include:
(1) The opportunity of the witness to view the criminal at the time of the crime;
(2) The witness's degree of attention;
(3) The accuracy of his prior description of the criminal;
(4) The level of certainty demonstrated at the confrontation; and
(5) The time between the crime and the confrontation.
[Manson v. Brathwaite], 432 U.S. [98] at 110-14, 97 S.Ct. [2243] at 2250-53, 53 L.Ed.2d [140] at 151, 153, 154 [1977].

*723 391 So.2d at 1008.
Directing these factors to the facts in this case, we conclude:
(1) The prosecutrix had ample opportunity to view Wilson for 20 to 25 minutes during the commission of the crime. She testified she looked at his face while he was taking the money and again while they were standing outside the store in the sunlight.
(2) The prosecutrix testified that she purposefully scrutinized Wilson because she wanted to be able to remember his face.
(3) The prosecutrix described the man who attempted to rape her as being about 5 feet, 6 1/2 inches tall with a small beard.
(4) The prosecutrix positively identified Wilson at the lineup.
(5) While testimony was equivocal as to the exact date of the lineup, it occurred no more than nine days after the crime.
Considering the foregoing facts, we are of the opinion there was no substantial likelihood that Wilson would be misidentified. Therefore the trial court properly overruled the motion to suppress the lineup identification.
Wilson next contends the allegedly unreliable pre-trial identification tainted the prosecutrix's in-court identification of him. In view of our holding the pre-trial identification was properly admitted, we find this argument meritless. We note further the prosecutrix made a positive in-court identification of Wilson as the man who came into her store on December 30, 1977, and attempted to rape her. We are therefore of the opinion the state established an independent source for the in-court identification notwithstanding the lineup identification.
Wilson's fifth proposition is that the trial court erred in refusing three instructions offered by the defense. The first such instruction was peremptory and properly refused in our opinion.
We have held that while the jury determines the weight and worth of a statement, its admissibility is a question of law for the court. Craft v. State, 380 So.2d 251, 255 (Miss. 1980). In view of this ruling, Instruction D-8 sets forth an incorrect principle of law and was therefore correctly refused.
Finally, Instruction D-3 would have informed the jury the following:
In every criminal case, the State must first establish the fact that a crime has been committed. This is known as the corpus delicti. To constitute a crime, there must be the joint operation of two essential elements, an act forbidden by law and an intent to do the act. Before the defendant may be found guilty of a crime, the State must establish beyond a reasonable doubt that under the statute defined in these instructions defendant was forbidden to do the act charged, and that he intentionally committed the act.
The court properly refused this instruction as being abstract. Callahan v. State, 419 So.2d 165 (Miss. 1982). Further, the court had already instructed the jury on the element of intent to do an act forbidden by law. The court was not required to grant repetitive instructions. Anderson v. State, 413 So.2d 725 (Miss. 1982).
We find no basis in the record for Wilson's sixth assignment of error, that the court erred in granting each instruction granted by the state.
Wilson's seventh assignment of error, that the verdict was against the overwhelming weight of the evidence, is in our opinion meritless in view of the facts already discussed in this opinion.
Finally, Wilson argues the verdict was the result of bias, prejudice and passion. We find in the record no evidence in support of this contention, nor do we find that Wilson's attorney made any objection to the jury panel or any member of it. This proposition is without merit.
Having carefully reviewed the record, we are of the opinion the trial court committed no reversible error and the case should be affirmed. We observe further that Wilson received a fair trial.
AFFIRMED.
*724 WALKER and ROY NOBLE LEE, P.JJ., and BOWLING, HAWKINS, PRATHER, ROBERTSON and SULLIVAN, JJ., concur.
DAN M. LEE, J., concurs in result only.