483 So.2d 690 (1986)
Edwin THOMPSON
v.
STATE of Mississippi.
No. 55326.
Supreme Court of Mississippi.
February 12, 1986.
Rehearing Denied March 12, 1986.
Darryl A. Hurt, Jr., Hurt & Hurt, Lucedale, for appellant.
Edwin Lloyd Pittman, Atty. Gen. by Anita Mathews Stamps, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before PATTERSON, C.J., and SULLIVAN and ANDERSON, JJ.
ANDERSON, Justice, for the Court:
On September 25, 1982, Jim's Discount Drugs in Lucedale, MS was robbed by a single white male. Jim Busby, the proprietor of the store, was behind the counter when the robber entered. The robber brandished a pistol and compelled Busby to surrender various controlled substances. While the robbery was in progress, a customer, Linda Holland came into the store with her ten-year-old son. The robber forced them all to lie on the floor while he fled.
Just over five months later, the defendant, Edwin Thompson, was arrested for this offense. He was indicted for armed robbery by the grand jury of George County.
On March 3, 1983, (the day after Thompson's arraignment) Thompson was sitting alone in his cell at the George County Jail, *691 when Jim Busby, the victim, walked into the detention area and looked at him. Busby then left. Before trial, defense counsel made a motion in limine asking that Busby's testimony as to the identification of the perpetrator be excluded because of the incident in the jail. This motion was denied by the court. Trial was held in the Circuit Court of George County, after which a jury found Thompson guilty as charged. He was sentenced to life imprisonment.
On appeal, Thompson argues that being viewed by Busby at the jail deprived him of his Sixth Amendment right to counsel and impermissibly tainted Busby's in-court identification of him as the robber. He also urges other assignments of error as well, but they obviously have no merit.

I. WAS THOMPSON DEPRIVED OF HIS RIGHT TO COUNSEL?
The U.S. Supreme Court has held that after criminal proceedings have been instituted against a defendant, any lineup or showup constitutes a critical stage of the proceedings, at which the defendant has a Sixth Amendment right to have his counsel present. U.S. v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967); Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967). Mississippi follows the Wade/Gilbert doctrine, as, of course, it is bound to do. Allen v. State, 274 So.2d 136, 138 (Miss. 1973).
Thompson argues that the impromptu viewing by Busby in the jail constituted a show-up at which his attorney should have been present for his protection. But before Thompson can avail himself of his Wade/Gilbert remedy, he must establish that a certain degree of state action is involved. Sixth Amendment rights are part of the due process of law guaranteed by the Fourteenth Amendment. Faretta v. California, 422 U.S. 806, 818, 95 S.Ct. 2525, 2532, 45 L.Ed.2d 562 (1975). As a result, however, they are subject to the same restrictions as apply to the due process clause of the Fourteenth Amendment itself. Of these qualifications, one of the most significant is that these guaranties do not apply to acts by private individuals. See e.g., Lugar v. Edmondson Oil Co., Inc., 457 U.S. 922, 936, 102 S.Ct. 2744, 2753, 73 L.Ed.2d 482, 495, (1982); Central Hardward Co. v. NLRB, 407 U.S. 539, 547, 92 S.Ct. 2238, 2243, 33 L.Ed.2d 122, 128-29 (1972). In order for the amendment to apply there must be a "sufficiently close nexus between the [government] and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the government itself." Jackson v. Metropolitan Edison Co., 419 U.S. 345, 351, 95 S.Ct. 449, 453, 42 L.Ed.2d 477, 484 (1974).
Thompson's position on this appeal is that because Busby's foray into the cell area was permitted by the radio operator, it constituted state action. The argument is based on the sheriff's admission that the radio operators were his "agents whenever [he is] not available." The sheriff also admitted that their decision was his decision when he was not there. However, the fact that the radio operators were officials of the state, does not, in itself, dispose of the question of whether Busby's entry into the cell area was a state act. The record contains undisputed testimony that Busby was a frequent visitor to the jail and was often allowed to go into the cell block area. Busby gave uncontradicted testimony that he did not enter the cell area for the purpose of identifying Thompson and no official of the sheriff's department summoned him to the jail or even told him that Thompson was being held there. Perhaps more important is the fact that he did not tell the radio operator that he was going to see Thompson. In fact, it is not clear from this record that the radio operator was even aware that Busby was the alleged victim of Thompson's supposed crime. On the whole, it seems very strained to argue that Busby's viewing of Thompson in the cell was arranged or authorized by the state. It seems rather to have been the independent act of a private individual. Certainly, it seems to fall far short of the exacting standard demanded by the Supreme Court and the Metropolitan Edison case.
*692 In United States v. Thevis, 665 F.2d 616 (11th Cir.1982), one of the defendants was sitting in a hallway at the courthouse when a witness, who was being interviewed by prosecutors there, happened to see him. This witness then identified the defendant to the prosecutors as a man whom he had seen near the scene of the crime. The defendant claimed this encounter had been staged by the prosecutor and thus, violated his Sixth Amendment right. The court rejected this contention concluding that the encounter was "purely inadvertent" and the Sixth Amendment right was not triggered in the absence of "any evidence that the prosecutors staged the encounter." 665 F.2d at 642. The encounter between Busby and Thompson at the jail house seems to be of the same type. We deplore the laxity which could allow such an incident. Nonetheless, we do not consider it the sort of evil that rises to a constitutional level.

II. WAS BUSBY'S IN-COURT IDENTIFICATION OF THOMPSON IMPERMISSIBLY TAINTED BY THE INCIDENT AT THE JAIL?
Appellant argues that because the viewing of Thompson in the jail house was improperly suggestive, Busby's in-court identification of Thompson was tainted and should have been excluded. The current guidelines for judging the effect of an improperly suggestive show up are those laid down by Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977). The high court gave a detailed discussion of previous decisions in the field, especially Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967), and Neil v. Biggers, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972). After harmonizing these decisions, the Court came to the conclusion that:
Reliability is the linchpin the determining the admissibility of identification testimony for [allegedly improper suggestive] confrontations. The factors to be considered ... include the opportunity of the witness to view the criminal at the time of the crime, the witnesses degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the time and the confrontation. Against these factors is to be weighed the corrupted effect of the identification itself.
Manson, 432 U.S. at 114, 97 S.Ct. at 2253, 53 L.Ed.2d at 154. In substance, the court reaffirmed the Biggers doctrine that an identification procedure was improperly suggestive only if it resulted in "a substantial likelihood of misidentification". Biggers, 409 U.S. at 201, 93 S.Ct. at 383, 34 L.Ed.2d at 412.
Mississippi has implemented the Manson doctrine in numerous subsequent cases. In York v. State, 413 So.2d 1372 (Miss. 1982), perhaps our leading case, we summarized as follows:
An impermissibly suggestive pretrial identification does not preclude in-court identification by an eye witness who viewed the suspect at the procedure, unless: (1) from the totality of the circumstances surrounding it, (2) the identification was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification. [413 So.2d at 1383]
See also, e.g. Tobias v. State, 472 So.2d 398, 399, (Miss. 1985); Wilson v. State, 451 So.2d 718, 722, (Miss. 1984); Young v. State, 420 So.2d 1055, 1058 (Miss. 1982). In practice Mississippi has tended to lay a heavy burden on defendants who are contesting the propriety of a pretrial identification procedure. In one case, the victim's in court identification of the defendant was allowed, even though the police had previously summoned her to the station to view him when he was alone. Williams v. State, 463 So.2d 1078, 1079, (Miss. 1985).
We have no case discussing the effect of an allegedly suggestive pretrial confrontation not arranged by state authorities. In a recent federal habeas case, a sheriff drove the victim past the defendant's house. He happened to be sitting on the front porch, where the victim saw him. *693 Agreeing with the state court that this identification was a "complete happenstance unarranged by police" the court held that such a "brief inadvertent encounter ... was not impermissibly suggestive." Albert v. Montgomery, 732 F.2d 865, 871-72 (11th Cir.1984). In one New York case, a witness was being interviewed by the police at the police station when he happened to see the defendant, who was also present in the police station at the time. The court held that this accidental show up was not impermissibly suggestive. People v. Gonzalez 61 A.D.2d 666, 671, 403 N.Y.S.2d 514, 517 (1978).
In the present case, the victim testified that he had a clear view of the robber at the time of the crime and he looked directly at the robber for almost one minute. He later identified Thompson from police photographs. He was also quite positive of his in-court identification of Thompson. This is not a case in which there is a "substantial likelihood of misidentification."
In short, the act of Busby in viewing Thompson in the jailhouse was performed in his capacity as a private individual and did not trigger any Sixth Amendment right to counsel in Thompson. Nor is there any constitutional requirement that Busby's in court identification of Thompson be excluded because of any improper suggestiveness. We hold that his conviction was free of any constitutional infirmity, and we affirm it.
AFFIRMED.
PATTERSON, C.J., and WALKER and ROY NOBLE LEE, P.JJ., and HAWKINS, DAN M. LEE, PRATHER, ROBERTSON and SULLIVAN, JJ., concur.