529 So.2d 649 (1988)
Craig GOGGINS
v.
STATE of Mississippi.
No. 57762.
Supreme Court of Mississippi.
July 27, 1988.
Rehearing Denied August 10, 1988.
*650 Sam P. Cooper, Jr., Picayune, for appellant.
Edwin Lloyd Pittman and Mike Moore, Attys. Gen. by Billy L. Gore, Asst. Atty. Gen., Jackson, for appellee.
EN BANC.
SULLIVAN, Justice, for the Court:
On August 29, 1986, a judgment was returned in the Circuit Court of Pearl River County, where Craig Goggins was tried and found guilty of armed robbery. Goggins was sentenced to twenty (20) years in the custody of the Mississippi Department of Corrections. He now appeals to this Court assigning the following as error:
I. That the trial court erred in allowing the district attorney to excuse without proper cause black jurors Melinda Hayes and Herbert R. Lee;
II. That the trial court erred in not sustaining appellant's motion to suppress the identification of appellant;
III. That the trial court erred in not sustaining appellant's objection to prosecution witness, Donna Cowart, dramatically leaving the witness stand to view and identify appellant in the courtroom; and
IV. That the verdict of the jury was against the great weight of the evidence.
At approximately 9:15 p.m. on March 13, 1985, a black man wearing a hood over his head and a blue handkerchief under his nose entered the JAS Quick Stop Convenience Store in Picayune, Mississippi, armed with a pistol and demanded money from store attendant Donna Cowart. The robber fled with $1,215.76.
A frontal and profile view of the robber was sketched by a local artist two days later based on Cowart's description. Cowart testified that the drawings were accurate. On April 18, 1985, a photographic lineup was presented to Cowart by Picayune Police Officer Charles Stockstill. Out of six photographs, Cowart identified Goggins as the robber. Coward also identified Goggins in court.
At trial, Goggins testified that he was at home in Slidell, Louisiana, at the time of the robbery. Five witnesses supported his alibi.
The jury found Goggins guilty of armed robbery but was unable to fix a penalty. Goggins was sentenced by the trial judge to twenty (20) years in the Mississippi Department of Corrections and he is presently incarcerated.

I.

THAT THE TRIAL COURT ERRED IN ALLOWING THE DISTRICT ATTORNEY TO EXCUSE WITHOUT PROPER CAUSE BLACK JURORS MELINDA HAYES AND HERBERT R. LEE.
This case involves a black defendant and a white victim. Goggins contends that the State improperly used two of its peremptory challenges to systematically exclude blacks from the jury. Goggins first objected to the composition of the special venire, claiming that it did not fairly represent the proportion of black and whites in Pearl River County. The court overruled the motion finding that the jury selection process was conducted correctly; the names were drawn from the jury box in the presence of the defendant and the cards *651 gave no indication of race of the potential juror. Defense counsel conceded that he "had no problem with the way it was done."
After defense counsel had exercised his peremptory challenges the following exchange took place:
MR. McDONALD:
We would also like the record to show the first jurors were white and the defendant is black and that the defense attorney has given absolutely no reason for striking these first twelve jurors except the only possible reason there could be is racial reasons, and he has systematically continued to strike every white person on the jury.
MR. COOPER:
Now, that's not necessarily true. That's a conclusion of yours.
MR. McDONALD:
It's not true? What are the reasons you're striking those jurors, juror by juror?
MR. COOPER:
I choose to. They're white.
MR. McDONALD:
Is that reasonable for you to do that?
MR. COOPER:
Sure it's reasonable. I can do that.
MR. McDONALD:
I just want to find out if that's reasonable, because I am going to exercise my challenges like that, too, now that I've got it in the record that he says it's reasonable; and I just wanted to clarify that, Judge.
The State struck two black jurors, Melinda A. Hayes and Herbert R. Lee, resulting in a jury composed of eleven white jurors and only one black juror. The trial judge required the prosecutor to articulate his reasons for striking the black jurors.
Regarding Hayes, the prosecutor explained that she would not look at him directly and she had not fully completed the jury form (she had failed to answer how many miles she lived from the courthouse and the names of her father and mother). Regarding Lee, the prosecutor explained that Lee would not look at him and showed an indifferent attitude. When listing his reasons for excluding Hayes the prosecutor also said the following:
We also, based on the classes in jury selection that were given pursuant to the continuing legal education requirements conducted by the University of Mississippi School of Law that brought in jury selection experts and gave us instructions on groups of people that would generally be favorable to the Defense and favorable to the Prosecution, information for these groups to make a decision on selecting jurors and striking jurors, and during the course of that instruction it was indicated that in cases that involved young black women and young black men, they would be in a group that would be more favorable towards the defendant. And so we would like the record to show this woman is twenty-four years of age.
"A prosecutor's use of peremptory challenges to exclude blacks from a jury trying a black defendant may be the basis for a claim of purposeful racial discrimination under the due process clause." Thomas v. State, 517 So.2d 1285, 1286 (Miss. 1987), citing Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).
In the case at hand, the trial judge wisely required the prosecutor to state his reasons for excluding the black jurors. However, no ruling was made on the sufficiency of the explanations given by the prosecutor. Recently, this Court has addressed Batson claims and stated the following:
Once the accused has made a prima facie case of intentional discriminatory use of one or more of the prosecution's peremptory challenges, the burden shifts to the prosecution to come forward with a racially neutral explanation for each of the challenges. Such an explanation "need not rise to the level of justifying exercise of a challenge for cause," 476 U.S. at 97, 106 S.Ct. at 1723, 90 L.Ed.2d at 88, but may not include the prosecutor's "assumption  or his intuitive judgment  that they [black jurors] would be partial to the defendant because of their *652 shared race." 476 U.S. at 97, 106 S.Ct. at 1723, 90 L.Ed.2d at 88.
Lockett v. State, 517 So.2d 1346, 1352 (Miss. 1988), and Williams v. State, 507 So.2d 50, 52 (Miss. 1987).
In the case at hand the prosecutor candidly admitted that black jurors were excused because the defendant was black. Batson condemns and forbids this practice.[1] Since the United States Supreme Court's opinion in Batson represents a departure from prior case law, we offer, from Batson, the following:
Just as the Equal Protection Clause forbids the States to exclude black persons from the venire on the assumption that blacks as a group are unqualified to serve as jurors, so it forbids the States to strike black veniremen on the assumption that they will be biased in a particular case simply because the defendant is black. The core guarantee of equal protection, ensuring citizens that their State will not discriminate on account of race, would be meaningless were we to approve the exclusion of jurors on the basis of such assumptions, which arise solely from the jurors' race.
Batson v. Kentucky, 476 U.S. at 97, 106 S.Ct. at 1723, 90 L.Ed.2d at 88.
Because the prosecutor's use of peremptory challenges violated the Equal Protection Clause this case must be reversed and remanded for a new trial.

II.

THAT THE TRIAL COURT ERRED IN NOT SUSTAINING GOGGINS' MOTION TO SUPPRESS THE IDENTIFICATION.
Cowart testified that she viewed the robbery for only five to seven minutes. She also testified that the robber had a handkerchief under his nose and a hood over his head which came to just above his eyebrows. The hood did fall back at one point and she saw his hairline.
As noted earlier, Cowart described the robber to a local artist who sketched a frontal and profile view of the man. She also identified Goggins out of a photographic lineup and at trial. When Cowart picked Goggins out of the photographic lineup she recalled a prominent scar on the robber's forehead that she had failed to mention to the police prior to that time. She testified that seeing the scar made her certain Goggins was the robber.
It is difficult to ascertain exactly which identification Goggins argues should have been excluded. The cases cited in support of his argument deal with whether one identification was impermissibly suggestive so as to taint the other. Thus, this writer assumes that the question presented is whether the photographic lineup was impermissibly suggestive and if so was the in-court identification of Goggins tainted as a result.[2] Both parties cite basically the same rules as authority for their arguments but naturally reach different conclusions therefrom.
The appropriate analysis is found in Wilson v. State, quoting Bankston v. State, 391 So.2d 1005 (Miss. 1980):
In Neil v. Biggers, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972), the United States Supreme Court held that even if the pretrial identification procedure had been unnecessarily suggestive the identification did not have to be excluded if upon consideration of the totality of the circumstances there was no substantial likelihood of misidentification. The Court set out five factors to be used in analyzing the totality of circumstances. These factors include:
(1) The opportunity of the witness to view the criminal at the time of the crime;
(2) The witness's degree of attention;
(3) The accuracy of his prior description of the criminal;
(4) The level of certainty demonstrated at the confrontation; and
(5) The time between the crime and the confrontation.

*653 [Manson v. Brathwaite], 432 U.S. [98] at 110-14, 97 S.Ct. [2243] at 2250-53, 53 L.Ed.2d [140] at 151, 153, 154 [1977].
391 So.2d at 1008.
Wilson v. State, 451 So.2d 718, 722-23 (Miss. 1984), and York v. State, 413 So.2d 1372 (Miss. 1982).
Applying the above factors to this case:
(1) Cowart viewed the robber five to seven minutes during the commission of the crime. She was also able to see him clearly and had her attention focused on him the entire time.
(2) Cowart testified that she looked directly at the robber.
(3) Cowart described the robber to a local artist two days after the robbery. The sketches bear a fair resemblance to Goggins.
(4) Cowart positively identified Goggins at the photographic lineup and in court at trial.
(5) The photographic lineup was presented to Cowart on April 18, 1985. The robbery occurred on March 13, 1985, approximately a month earlier.
The above facts need only be considered when a pre-trial identification is impermissibly suggestive. In this case Cowart testified that no one was singled out to her from the lineup, that no one suggested to her who to pick and no names appeared on any of the pictures. Charles Stockstill, the officer who arranged the photographic lineup, testified that he in no way suggested to Cowart which individual he suspected.
The photos were all of black men with mustaches; Goggins does not "stick out." Cowart's pretrial identification was in no way suggestive.
Based on the foregoing analysis we hold that the photographic lineup was in no way impermissibly suggestive and that there was no substantial likelihood of misidentification. Since the trial judge properly declined to suppress the identification, this assignment of error is without merit.

III.

THAT THE TRIAL COURT ERRED IN NOT SUSTAINING GOGGINS' OBJECTION TO PROSECUTION WITNESS, DONNA COWART, DRAMATICALLY LEAVING THE WITNESS STAND TO VIEW AND IDENTIFY GOGGINS IN THE COURTROOM.
During the identification suppression hearing, the following occurred:
Q. Donna, is the man that you have identified and the man that you believe robbed you that day, is he in the courtroom today?
A. Can I get up?
MR. COOPER: We would object, for the record.
THE COURT: Let the objection be overruled. Sure, you can go wherever you need to, Donna.
Let the record show that she is walking over to counsel table to get a close look at the defendant; and there are also some other people seated around counsel table and she is observing them.
A. Yes, sir.
Q. Are you certain of that?
Q. Yes, sir.
Q. Would you point him out, please?
A. Right there (indicating).
MR. McDONALD: We would like the record to reflect that she has identified the defendant in this case.
MR. McDONALD:
Judge, you know, it meant something to me when she went over there and looked at the guy. If she wants to do that again in the presence of the jury, can she?
THE COURT:
Yes, sir. In other words, this is outside the presence of the jury, but I will instruct her that she can do that, because she did it at a time when the jury was not present so obviously for her to walk over and give the defendant that close an examination wasn't calculated to impress the jury because they weren't even here. So I certainly would not think it was a grandstand play to impress the jury, since she's already done it, to be certain. *654 So yes, she will be allowed to do that again.
MR. COOPER:
Judge, for the record, I would like to enter an objection to her doing that for that purpose.
Cowart left the witness stand to view Goggins when the jury returned just as she had done during the suppression hearing. Goggins argued that the identification prejudiced the jury and should have been excluded. In support, Goggins cites Rule 403 of the Mississippi Rules of Evidence which states that relevant evidence may be excluded if the danger of unfair prejudice outweighs its probative value. Goggins also cites Coleman v. State, 198 Miss. 519, 522, 23 So.2d 404 (1945), wherein this Court said the following:
Incompetent evidence pressed upon the jury as this was, especially if of an inflammatory character, is presumed to have been harmful, and it is only when we can say with confidence that it had, in all probability or likelihood, no such effect that we may decline to reverse on account of it.
The State argues that no error resulted by Cowart's in court performance, but cites no authority.
We are of the opinion that the reenactment of Cowart's original in-court identification of Goggins was cumulative and possibly prejudicial. Since the reenactment had no probative value and may have prejudiced the jury, it should not occur at retrial.

IV.

THAT THE VERDICT WAS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE.
Finally, Goggins contends that the verdict was contrary to the weight of the evidence. Since this case is to be retried, we express no opinion on the evidence, except to note that, based on this record, we decline to render a judgment in Goggins' favor.
Because the prosecutor's use of peremptory challenges violates Batson v. Kentucky and its state progeny, this case is reversed and remanded for a new trial.
REVERSED AND REMANDED.
ROY NOBLE LEE, C.J., DAN M. LEE, P.J., and PRATHER, ROBERTSON, ANDERSON, and ZUCCARO, JJ., concur.
HAWKINS, P.J., and GRIFFIN, J., dissent.
HAWKINS, Presiding Justice, dissenting:
As I read Batson, the U.S. Supreme Court did not intend any profound change in the rights of the prosecution to exercise peremptory challenges. The Court very clearly made a significant, definite change: that the prosecuting attorney cannot simply exclude blacks based solely upon a personal assumption or intuition, but must "articulate a neutral explanation related to the particular case to be tried." Batson v. Kentucky, 476 U.S. 79, 98, 106 S.Ct. 1712, 1723, 90 L.Ed.2d 69 (1986).
Because the need and the right to exercise peremptory challenges are so basic to and deeply ingrained within our system of justice, in my view courts generally should be quite wary of making an incursion on this right beyond that constitutionally prescribed by the U.S. Supreme Court.
In my view the district attorney gave a sufficient explanation for the circuit judge to make a discretionary determination that the State had met the Batson muster as to prospective juror Melinda A. Hayes.
As to prospective juror Herbert R. Lee, I do not believe we can say from this record whether the district attorney in fact did or did not have a satisfactory "neutral explanation." Batson clearly does not remove from the State the right to peremptorily challenge any prospective juror, regardless of his or her race, which the prosecuting attorney has reason to believe will favor the accused beyond the presumption of innocence the law requires, or who will require a greater burden of proof by the State than imposed by law.
At most I would remand this case to the circuit court for a Batson hearing before *655 the circuit judge, and allow the district attorney to furnish the court some specifics from the seminar upon which he based his objection. If the district attorney indeed based his objection upon an actual study made on the subject, or statistics furnished him on the matter, then the State had the right to exercise the peremptory challenge.
GRIFFIN, J., joins this opinion.
NOTES
[1] Batson had been decided for only a matter of months at the time of this trial.
[2] The State addresses this assignment in this manner as well.