ISHEE, J.,
for the Court:
¶ 1. In September 2007, Mario London was arrested and charged with grand larceny after stealing a computer from a Wal-mart in Southaven, Mississippi. After London’s arrest, an eyewitness to the crime was shown a photographic lineup, from which the eyewitness immediately and positively identified London as the culprit. London was later indicted and tried before a jury in the Circuit Court of DeSoto County. He was found guilty of grand larceny in August 2009. The circuit court then determined that London qualified as a habitual offender, and his sentence was subsequently enhanced by the habitual-offender statute. As such, London was sentenced to life in the custody of the Mississippi Department of Corrections (MDOC) without eligibility for parole or probation. Aggrieved, London appeals. Finding no error, we affirm.
FACTS
¶ 2. On September 26, 2007, London entered a Walmart in Southaven, retrieved a computer from the electronics department, and began to leave the store without paying for the computer. As London walked toward the store’s exit, a Walmart greeter, Lorene Branstetter, asked London to produce his receipt for the computer. London blatantly refused, despite several requests from Branstetter for London to stop, and continued walking toward the exit doors.
¶ 3. Branstetter noticed a friend and former Walmart employee, Tony Boykin, entering the store as London was leaving, and told Boykin that London was stealing the computer. Boykin also attempted to stop London and force him to show Bran-stetter a receipt. However, London again refused, stating: “I don’t really have to show her a — thing.” Boykin followed London to the parking lot where he observed London place the computer in a vehicle and drive away. London quickly hit a curb in the Walmart parking lot, and his car became lodged in a median. Authorities retrieved the computer from the vehicle after apprehending London, who had fled the scene on foot.
¶ 4. Approximately two hours after the incident, Crystal Stockley, a Walmart asset-protection coordinator, arrived at the store and was asked to review video footage of the events from the store’s surveillance camera. Thereafter, Stockley pro *839 duced two videos to the authorities that showed London’s actions from the time he entered Walmart until he drove away in the parking lot.
¶ 5. Three weeks after the theft, the record reflects that Boykin was presented with a photographic lineup by the authorities and asked “if he recognized anybody.” The record further indicates that Boykin immediately and positively identified London as the culprit. Sometime later, London was indicted by a grand jury for grand larceny, and the case was set for trial in August 2009.
¶ 6. At the trial, the prosecution introduced the surveillance videos into evidence and played parts of one video to the jury during several examinations of witnesses. Specifically, during Boykin’s testimony, Boykin pointed to himself in the video and then gave a first-hand explanation of what was occurring as the video reflected London exiting Walmart with the computer, with Boykin following him, and London ultimately fleeing the scene. Branstetter’s testimony at trial supported Boykin’s description of events, and it further detailed the confrontation with London and his refusal to produce a receipt for the computer. During deliberations, the jury was allowed to watch the two videos in their entirety — videos that showed London entering Walmart, walking to the electronics department, taking the computer, encountering Branstetter and Boykin, and ultimately leaving Walmart without paying for the computer.
¶ 7. Subsequently, the jury found London guilty of grand larceny. Due to London’s eleven prior felony convictions, four of which were crimes of violence, the circuit court sentenced London to life in the custody of the MDOC as a habitual offender without eligibility for parole or probation. In his initial appellate brief, London’s counsel argued the following: (1) the photographic lineup used by authorities for Boykin to identify London was overly suggestive; (2) the imposition of a life sentence without eligibility for parole or probation constitutes cruel and unusual punishment; (3) the circuit court erred by allowing the jury to review the videos entered into evidence but not played during the trial; and (4) the verdict is against the overwhelming weight of the evidence.
¶ 8. Later, London’s counsel withdrew, and London submitted a supplemental brief pro se. In addition to London’s previous assignments of error, he also claims in his supplemental brief that the prosecution did not prove he was a habitual offender, such that enhancement of his sentence under the habitual-offender statute was improper. Since this argument is interrelated to London’s assertion that his enhanced sentence constitutes cruel and unusual punishment, we address those issues together.
DISCUSSION

I. Photographic Lineup

¶ 9. We have held that “[a] photographic lineup is impermissibly suggestive when ‘the accused is conspicuously singled out in some manner from the others.’ ” Jones v. State, 993 So.2d 386, 393 (¶ 14) (Miss.Ct.App.2008) (quoting York v. State, 413 So.2d 1372, 1383 (Miss.1982)). However, the Mississippi Supreme Court further stated:
An impermissibly suggestive pretrial identification does not preclude in-court identification by an eye witness [sic] who viewed the suspect at the procedure, unless: ... from the totality of the circumstances surrounding it, ... the identification was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentiflcation.
*840 Thompson v. State, 483 So.2d 690, 692 (Miss.1986) (citation omitted). Additionally, this Court has reiterated the following findings of the United States Supreme Court in concluding what factors are to be considered when determining whether a lineup was overly suggestive:
1. The opportunity of the witness to view the criminal at the time of the crime.
2. The witness’s degree of attention.
3. The accuracy of the witness’s prior description of the criminal.
4. The level of certainty demonstrated by the witness at the confrontation.
5. The length of time between the crime and the confrontation.
Jones, 993 So.2d at 393 (¶ 14) (quoting Neil v. Biggers, 409 U.S. 188, 199-200, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972)). Finally, we have also determined that “[i]n practice, Mississippi tends to place a heavy burden on defendants who are contesting the propriety of a pretrial identification procedure.” Id. (quoting Brown v. State, 829 So.2d 93, 102 (¶ 18) (Miss.2002)).
¶ 10. London asserts that the photographic lineup compiled by authorities and presented to Boykin for identification was overly suggestive because London’s “skin complexion and the other five persons[’ skin complexion] in the photospread [were] not similar.” London maintains that his skin tone is lighter than the other five individuals depicted in the lineup and that the difference singled him out.
¶ 11. However, having reviewed the photographic lineup, the individuals all retain very similar features to London. The skin tones of all the individuals depicted are very similar. The lineup provided one picture of an individual who is slightly darker-complected than London, and one who is slightly lighter-complected; and contrary to London’s argument, three others whose skin tones are almost identical to London’s. Accordingly, we find that the photographic lineup was not suggestive.
¶ 12. Additionally, Boykin had a face-to-face encounter with London at Walmart for a credible amount of time; he remembered the encounter very accurately; he was asked to identify London less than a month after the encounter; and he positively identified London immediately from the photographic lineup. Furthermore, Boykin identified London again under oath at the trial. Accordingly, we cannot conclude that the photographic lineup was impermissibly suggestive in any way or that there is a likelihood of misidentification. This issue is without merit.

II. Application of the Habitual-Offender Statute

¶ 13. Mississippi Code Annotated section 99-19-83 (Rev.2007) is part of the sentencing guidelines adhered to by courts in this state and governs habitual offenders as follows:
Every person convicted in this state of a felony who shall have been convicted twice previously of any felony or federal crime upon charges separately brought and arising out of separate incidents at different times and who shall have been sentenced to and served separate terms of one (1) year or more in any state and/or federal penal institution, whether in this state or elsewhere, and where any one (1) of such felonies shall have been a crime of violence shall be sentenced, to life imprisonment, and such sentence shall not be reduced or suspended nor shall such person be eligible for parole or probation.
(Emphasis added). With regard to the prosecution’s burden of proving applicability of the habitual-offender statute, the Mississippi Supreme Court has held that the State “must show[,] and the trial court *841 must determine^] that the records of the prior convictions are accurate, that they fulfill the requirements [for habitual-offender status], and that the defendant sought to be so sentenced is indeed the person who was previously convicted.” Phillips v. State, 421 So.2d 476, 481 (Miss.1982) (citations omitted).
¶ 14. Here, the record reflects that the prosecution provided the circuit court with London’s conviction record. London had been previously convicted of eleven felonies in Shelby County, Tennessee, four of which were crimes of violence, and he had been sentenced to and served over a year or more on several of the convictions. Although the convictions were from Tennessee, section 99-19-83 provides that the state in which the conviction was received is inconsequential. Accordingly, the prosecution met its burden of proof, and the circuit court properly applied the habitual-offender statute.
¶ 15. Furthermore, both this Court and the Mississippi Supreme Court have “consistently held that sentences under the habitual-offender statute do not constitute cruel and unusual punishment.” Long v. State, 52 So.3d 1188, 1197 (¶ 31) (Miss.2011) (citing Cummings v. State, 29 So.3d 859, 861 (¶ 5) (Miss.Ct.App.2010)). Additionally, the supreme court also specifically held that sentences imposing life without parole or probation pursuant to the habitual offender statute are not subject to an analysis with regard to the proportionality of the crime to the sentence. Whitlock v. State, 47 So.3d 668, 674-75 (¶ 19) (Miss.2010) (citing Hawkins v. State, 11 So.3d 123, 129 (¶ 16) (Miss.Ct.App.2008)). As such, London’s claims regarding application of the habitual-offender statute and the constitutionality of his sentence are meritless.

III. Jury Consideration of the Surveillance Videos

¶ 16. London asserts that it was improper for the circuit court to allow the jury to view the surveillance videos during deliberations when the videos were not played for the jury in their entirety during the trial. However, London fails to cite to any law that would prohibit a jury from viewing the contents of a video that has been properly admitted into evidence. The Mississippi Supreme Court has consistently held that “an argument unsupported by cited authority need not be considered by the Court.” Alexander v. Womack, 857 So.2d 59, 62 (¶ 12) (Miss.2003).
¶ 17. By contrast, Uniform Rule of Circuit and County Court 3.10 mandates: “The court shall permit the jury, upon retiring for deliberation, to take to the jury room the instructions and exhibits and writings which have been received in evidence, except depositions.” (Emphasis added). Accordingly, the circuit court was required to allow the jury to view the videos during deliberations once the videos had been properly admitted into evidence. This issue is without merit.

IV. Weight of the Evidence

¶ 18. When analyzing a claim that a verdict is against the overwhelming weight of the evidence, an appellate court “will only disturb a verdict when it is so contrary ... that to allow it to stand would sanction an unconscionable injustice.” Bush v. State, 895 So.2d 836, 843 (¶ 18) (Miss.2005) (citation omitted). Additionally, “the evidence should be weighed in the light most favorable to the verdict.” Id. (citation omitted).
¶ 19. Here, London asserts that the prosecution failed to “prove that the computer was actually stolen.” However, the prosecution presented two eyewitnesses to the incident, one of whom posi *842 tively identified London in a photographic lineup, as well as two surveillance videos that show London entering Walmart, taking the computer, and immediately leaving the store without paying for it. Additionally, the record reflects that when asked to show a receipt for the computer, London refused to produce one and instead fled the premises. We hold that the prosecution presented adequate evidence for the jury to determine that London had committed the crime of grand larceny. This issue is meritless.
CONCLUSION
¶ 20. London’s first assignment of error regarding the photographic lineup is unfounded. We conclude that the photographic lineup was not impermissibly suggestive and that there was no possibility of misidentification when the witness identified London as the culprit. Additionally, the prosecution’s production of London’s criminal record properly provided the circuit court ample evidence to determine London’s status as a habitual offender. Given London’s criminal history, application of the habitual-offender statute and sentence of life without eligibility for parole or probation was proper under the sentencing guidelines. Furthermore, presentation to the jury of the videos was also proper since the videos had been admitted into evidence. Accordingly, we affirm the judgment of the Circuit Court of DeSoto County.
¶ 21. THE JUDGMENT OF THE CIRCUIT COURT OF DESOTO COUNTY OF CONVICTION OF GRAND LARCENY AND SENTENCE AS A HABITUAL OFFENDER OF LIFE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITHOUT ELIGIBILITY FOR PAROLE OR PROBATION, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., MYERS, BARNES, ROBERTS, CARLTON AND MAXWELL, JJ., CONCUR. RUSSELL, J., NOT PARTICIPATING.