754 So.2d 569 (2000)
Alonzo Laderick BUGGS, Jr. a/k/a Dirt and Letracy Denord Smith, Appellants,
v.
STATE of Mississippi, Appellee.
No. 1998-KA-01968-COA.
Court of Appeals of Mississippi.
January 18, 2000.
*570 William R. Sanders, Jr., Charleston, David L. Walker, Southaven, Attorneys for Appellants.
Office of the Attorney General by W. Glenn Watts, Attorney for Appellee.
BEFORE SOUTHWICK, P.J., DIAZ, AND PAYNE, JJ.
DIAZ, J., for the Court:
¶ 1. Alonzo Laderick Buggs, Jr., and Letracy Denord Smith, co-defendants, appeal the decision of the Tallahatchie County Circuit Court convicting Buggs of burglary and Smith of two counts of armed robbery. Buggs raises the following issues in this appeal: (1) whether the evidence presented at trial was sufficient to establish the crimes of burglary and armed robbery and whether the jury's verdict was against the overwhelming weight of the evidence, and (2) whether the trial court erred in refusing to grant a peremptory instruction to the jury. Smith raises the following issues in this appeal: (1) whether it was error for the trial court to deny his motion for severance, (2) whether the trial court erred by not suppressing the photographic identification, (3) whether the trial court erred by allowing the in-court identification, and (4) whether the trial court erred in granting certain jury instructions and by failing to give a limiting instruction. Finding no error, we affirm the decision of the trial court.

FACTS
¶ 2. On November 19, 1997, Deputy Sheriff Clifton Harris responded to a complaint at the Hemphill residence in Webb. Marilyn Hemphill stated that she, her two sons, Derrick Hemphill and Lester Westbrook, and Carlos Lakes and Markieth Bell were robbed at gun point in her home. Harris patrolled for a yellow Cadillac with a black top with Quitman County tags occupied by four males as described by the victims. When the vehicle was stopped in *571 Lambert, two people were insideJeremy Nathan and Letracy Smith, the co-defendant herein. A search of the vehicle yielded a .38 revolver; however, no fingerprints were found on the gun. When he was arrested, Smith was wearing a Dallas Cowboys jacket. Buggs was not in the car nor were his fingerprints found there. Harris did not recover a shotgun from the Cadillac.
¶ 3. Marilyn Hemphill stated that a man forced his way into her home with a gun. After that, Lester Hemphill, Markeith Bell, and Carlos Lakes came inside. Then, she testified that two more men entered her home followed by a fourth person. She testified that she did not know any of the men. Ms. Hemphill said she gave Brown $30 but that the four men seemed to be participating in the crime together. She stated that the lights were not on in the den but the kitchen light and television were on so she could see the assailants.
¶ 4. Lester Westbrook testified that Markeith, Carlos, and he were forced inside his home. At trial, he identified Buggs and Smith as two of the assailants. Westbrook said that Smith held a gun to him and asked for money. He testified that he was able to identify Buggs because Buggs removed the shirt he used to cover his face as he exited the home. He said the lights in the den and the television were on so he saw the perpetrators.
¶ 5. Derrick Hemphill testified that he was alone with his mother when a person knocked on the door and then forced himself inside the house along with other men. He gave the men $5 and stated that the men also searched the china cabinet for more money. He identified Smith as one of the men who searched the china cabinet. Furthermore, he was sure of his identifications because the light was on during the commission of the crime.
¶ 6. Carlos Lakes testified that he was walking with Markeith and Lester after playing basketball. When they heard a scream and went to Lester's house, they were pulled inside. He identified Smith and Buggs as two of the men in the house during the crime. He stated that Smith held a gun on Markeith and demanded money. He stated that two men were wearing Dallas Cowboy jackets and that one wore a leather coat. He did not see one of the men hide his face behind a t-shirt. He admitted that he did not tell Harris about the Dallas Cowboys jackets.
¶ 7. Markeith Bell also testified that he was forced inside the Hemphill residence where $40 was taken from him at gunpoint. He identified Smith as one of the assailants. He identified a Dallas Cowboys jacket as the one worn by Smith but was unable to distinguish it from other Dallas Cowboys jackets. He also testified that two men were wearing Dallas Cowboy jackets and that he told this fact to either Deputy Harris or Shoemaker when he gave his statement although the statement does not state such and only describes one of the assailants as wearing a black leather coat.
¶ 8. Alonzo Buggs testified that he was not a participant in the crimes and claimed that he had never been to Webb, Mississippi, in his entire life. Buggs also stated that he knew his three codefendants-Letracy Smith, Jeremy Nathan, and Earnest Brown-and that he had seen them on November 19, 1997. Letracy Smith did not testify or call any witnesses on his behalf.
¶ 9. After a jury trial, Buggs was found guilty of burglary, and Smith was found guilty of two counts of armed robbery. The defendants' post-trial motions were denied. Feeling aggrieved, they perfected this appeal.

BUGGS'S DISCUSSION
¶ 10. Since both of the issues presented by Buggs require the same analysis, we will combine them in our discussion.
I. WHETHER THE EVIDENCE PRESENTED AT TRIAL WAS SUFFICIENT TO ESTABLISH THE CRIMES OF BURGLARY AND ARMED ROBBERY AND WHETHER *572 THE JURY'S VERDICT WAS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE
II. WHETHER THE TRIAL COURT ERRED IN REFUSING TO GRANT A PEREMPTORY INSTRUCTION TO THE JURY
¶ 11. The three challenges by Buggs-motion for directed verdict, request for peremptory instruction, and motion for JNOV-question the legal sufficiency of the evidence. Since each requires consideration of the evidence before the trial court when made, this Court properly reviews the ruling on the last occasion the challenge was made in the trial court. This occurred when the trial court overruled Buggs's motion for JNOV. Wetz v. State, 503 So.2d 803, 807-08 (Miss.1987).
¶ 12. In appeals from an overruled motion for JNOV, the sufficiency of the evidence as a matter of law is viewed and tested in a light most favorable to the State. Esparaza v. State, 595 So.2d 418, 426 (Miss.1992). The prosecution must be given the benefit of all favorable inferences that may reasonably be drawn from the evidence. Hammond v. State, 465 So.2d 1031, 1035 (Miss.1985). Matters regarding the weight and credibility to be accorded the evidence are to be resolved by the jury. Neal v. State, 451 So.2d 743, 758 (Miss.1984). In the present context we must, with respect to each element of the offense, consider all of the evidencenot just the evidence which supports the case for the prosecutionin the light most favorable to the verdict. Harveston v. State, 493 So.2d 365, 370 (Miss.1986). We may reverse only where, with respect to one or more of the elements of the offense charged, the evidence so considered is such that reasonable and fair-minded jurors could only find the accused not guilty. Wetz, 503 So.2d at 808.
¶ 13. Testimony was presented at trial that Buggs was one of the four men present in the Hemphill residence during the burglary and robberies. Marilyn Hemphill testified that she was held at gun point in her home while four men worked in concert to burglarize her home and rob her and other victims. Lester Westbrook, Ms. Hemphill's sixteen-year-old son, stated that he was pulled into the house by one of the men. He stated that he saw Buggs's face under decent lighting conditions, and he described what Buggs was wearing and how Buggs used a red t-shirt to partially shield his face. Westbrook identified Buggs's photograph four days later. Westbrook testified that he based his identification of Buggs on his opportunity to see Buggs's face as he was leaving the Hemphill residence. When asked if he was sure that Buggs was in his house, Westbrook answered affirmatively.
¶ 14. Derrick Hemphill corroborated this testimony. He further testified that Buggs was an active participant in searching the china cabinet for valuables while Smith brandished the revolver and took money from the victims. Furthermore, Buggs testified in his own behalf, denying that he was ever at the Hemphill residence. He was unable to explain why Westbrook and Derrick Hemphill both identified him as being one of the assailants. Since a question of fact existed-whether Buggs was at the crime scene as a participant in the burglary-it was proper for the jury to resolve. The scope of appellate review does not extend to reviewing a jury's determination of which witness is credible. Since it was a decision for the jury whether to believe Buggs or the victims, this assignment of error is without merit.

SMITH'S DISCUSSION

I. WHETHER IT WAS ERROR FOR THE TRIAL COURT TO DENY SMITH'S MOTION FOR SEVERANCE
¶ 15. Uniform Circuit and County Court Rule 9.03 addresses the appropriateness of a grant of severance:

*573 The granting or refusing of severance of defendants in cases not involving the death penalty shall be in the discretion of the trial judge.
The court may ... grant a severance of offenses whenever:
1. If before trial, it is deemed appropriate to promote a fair determination of the defendant's guilt or innocence of each offense; or
2. If during trial, upon the consent of the defendant, it is deemed necessary to achieve a fair determination of the defendant's guilt or innocence of each offense.
¶ 16. "[W]here all the evidence at trial went to the guilt of both appellants and not to one more than the other," it is not error to try the defendants jointly. Blanks v. State, 451 So.2d 775, 777 (Miss. 1984). Also, where the testimony of one defendant "did not tend to exculpate himself at the expense" of another and there "does not appear to be a conflict of interest among the co-defendants," severance is not required. Duckworth v. State, 477 So.2d 935, 937 (Miss.1985).
¶ 17. Smith contends that he should have been granted a severance because Jeremy Nathan, a co-defendant who was a fugitive at the time of trial, gave a confession that placed Smith at the crime scene. Smith states his confrontation rights were violated because Nathan's statements were admitted into evidence and he could not confront him since Nathan was a fugitive. However, the record indicates that Nathan's confession was not admitted into evidence before the jury. In fact, the State took great precautions outside the presence of the jury to ensure that no witness testified as to its existence or contents in front of the jury.
¶ 18. Smith made his motion for severance at a pretrial conference. The trial court ruled that this was a "classic multi-count [case with] more than one crime being committed out of the same common series of events." The trial court chose in its discretion not to sever the co-defendants in this non-capital murder case. Neither defendants's testimony exculpated himself at the expense of the other and nor was there a conflict of interest between Smith and Buggs. Therefore, this assignment of error is without merit.
II. WHETHER THE TRIAL COURT ERRED BY NOT SUPPRESSING THE PHOTOGRAPHIC IDENTIFICATION
III. WHETHER THE TRIAL COURT ERRED BY ALLOWING THE IN-COURT IDENTIFICATION
¶ 19. A suppression hearing was held for the pre-trial photographic identifications. The trial judge overruled the motion to suppress and allowed testimony as to the pre-trial identifications and allowed the witnesses to make an in-court identification of the defendant.
¶ 20. The Mississippi Supreme Court has stated the scope of review of a suppression hearing findings in pre-trial photographic identification cases as follows:
The combined effect of the circuit court's pre-trial and trial rulings is that of a finding of fact that, under the totality of the circumstances ... in-court identification testimony had not been impermissibly tainted. We may, of course, disturb such a finding only where there is an absence of substantial credible evidence supporting it.
Ray v. State, 503 So.2d 222, 224 (Miss. 1986). Therefore, this Court must determine if, in the case sub judice, there is substantial credible evidence supporting the trial judge's findings.
¶ 21. Three decisions, referred to by commentators as the "Wade Trilogy," are United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967); Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967); and Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967). The "Wade Trilogy" and its progeny are the guidelines this Court must follow in determining the competency *574 of identification testimony. York v. State, 413 So.2d 1372, 1374 (Miss.1982). York is the leading case in Mississippi on this issue and has been followed by this Court on numerous occasions. See, e.g., Davis v. State, 510 So.2d 794 (Miss.1987); White v. State, 507 So.2d 98 (Miss.1987); Jones v. State, 504 So.2d 1196 (Miss.1987). As pointed out in York, there are two lines of analysis when considering pre-trial identifications: the Fourteenth Amendment due process analysis and the Sixth Amendment right-to-counsel analysis. Here, Smith raises only the question of due process point in his assignment of error.
¶ 22. His argument under the due process analysis has to do with the suggestiveness of the photographic display. Smith states that he was the only defendant included twice in the photo lineup and that in both photographs he was wearing a Dallas Cowboys jacket, an item of clothing described to the police by the victims. One other person pictured in the line-up wore a Dallas Cowboys jacket. Smith also claims that most of the men in the line-up were considerably older than he and his co-defendants. Such is undeniably a suggestive photographic display. See Bankston v. State, 391 So.2d 1005, 1008 (Miss.1980). A series of photographs where one is "conspicuously singled out in some manner from others ... is impermissibly suggestive." York, 413 So.2d at 1383. However, an impermissibly suggestive pre-trial identification does not preclude an in-court identification by an eyewitness who viewed the suspect at the procedure "unless: (1) from the totality of the circumstances surrounding it, (2) the identification was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." York, 413 So.2d at 1383. York continues that "even if testimony is proffered of the out-of-court identification itself," the same standard applies, except with the omission of the word "irreparable," resulting in a slightly higher burden of proof for the state. Id. (citing Neil v. Biggers, 409 U.S. 188, 199, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972)). York goes on to set out the Neil factors to consider in determining whether these standards have been fulfilled:
1. Opportunity of the witness to view the accused at the time of the crime;
2. The degree of attention exhibited by the witness;
3. The accuracy of the witness's prior description of the criminal;
4. The level of certainty exhibited by the witness at the confrontation;
5. The length of time between the crime and the confrontation.
York, 413 So.2d at 1383; Neil, 409 U.S. at 199, 93 S.Ct. 375.
¶ 23. Applying these factors to the present case:
1. Opportunity to view the accused: Derrick Hemphill, Carlos Lakes, and Lester Westbrook testified that at the time of the crimes, the lighting in the living room was sufficient to permit them to observe Smith's face which was not covered by a disguise or mask. Smith remained in the living room about four minutes. According to Lester Westbrook, Smith held a pistol to his face and asked him for money. According to testimony at trial, Smith also held the pistol to Markeith Bell's chest in attempt to get money which Markeith gave him. These testimonies show ample opportunity for the eye witnesses to observe Smith.
2. Degree of attention: During the victims' observations of Smith, they noticed he had a pistol and that he was wearing a Dallas Cowboys jacket.
3. Accuracy of prior description: Officer Harris testified that Derrick Hemphill, Markeith Bell, and Carlos Lakes each identified Smith as one of the assailants. Lester Westbrook did not identity Smith at the photo line-up, but during the trial he did identify Smith as the perpetrator who carried a pistol.
*575 4. Witness's level of certainty at confrontation: Upon viewing the photographic display, three witnesses identified Smith.
5. Length of time between the crime and the confrontation: The photographic display was conducted five days after the crime.
¶ 24. There is ample credible evidence to support the trial court's determination that there was no substantial likelihood of irreparable misidentification in allowing the in-court identification, nor was there substantial likelihood of misidentification in allowing the testimony of the out-of-court identification itself. Therefore, these assignments of error are without merit.

IV. WHETHER THE TRIAL COURT ERRED IN GRANTING CERTAIN JURY INSTRUCTIONS AND BY FAILING TO GIVE A LIMITING INSTRUCTION
¶ 25. Smith complains that the trial court erred in granting two State-proposed jury instructions that separated two armed robberies from a series of actions by the defendants in this case. Smith relies on Mayfield v. State, 612 So.2d 1120, 1128 (Miss.1992) to argue that multiple convictions are barred where there is more than one victim. Mayfield was tried under the aggravated driving under the influence statute where the offense was a singular act of negligently driving which resulted in the death of two people. The present case is distinguishable because Marilyn Hemphill and Derrick Hemphill were robbed separately but during the same series of event. In Pharr v. State, 465 So.2d 294, 300-01 (Miss.1984), the supreme court held that multi-count indictments with separate convictions and sentences were appropriate where separate crimes are committed against multiple individuals at the same place and in roughly the same time frame. "The test is whether the individual acts are prohibited, or the course of action which they constitute. If the former, then each act is punishable separately ... if the latter, there can be but one penalty." Block-burger v. United States, 284 U.S. 299, 302, 52 S.Ct. 180, 76 L.Ed. 306 (1932).
¶ 26. Marilyn Hemphill testified that she gave the robbers $30 while being held at gunpoint. She identified the gun used in the robbery, as well as the fact that the four men who robbed her were working together. Furthermore, Smith and the handgun were found in the yellow Cadillac identified by Ms. Hemphill as being at the crime scene. Derrick Hemphill also testified that the robbers took $5 from him at gunpoint. The record evidence was sufficient to require separate instructions for the two robberies which occurred in close proximity to each other in the Hemphill residence. Therefore, this issue is without merit.
¶ 27. Smith also complains that no limiting instruction was given to instruct jurors as to what evidence could be considered against each defendant for the numerous crimes charged in this multi-count case. The record indicates that a limiting instruction on this issue was not requested by Smith. Nonetheless, one defense-proposed instruction was given which instructed the jury to consider separately the evidence for a conviction for each co-defendant. Mississippi Rule of Evidence 105 which addresses limited admissibility of testimony offers limiting instructions as a cure in some instances where testimony is introduced at trial which may affect one party but not the other. However, if the party affected fails to request a limiting instruction and the evidence is admitted, existing practice suggests that no errors were made. M.R.E. 105, cmt.; Freed v. Killman, 192 Miss. 643, 6 So.2d 909 (1942). Accordingly, this assignment of error is without merit.
¶ 28. THE JUDGMENT OF THE TALLAHATCHIE COUNTY CIRCUIT COURT CONVICTING BUGGS ON COUNT TWO OF BURGLARY OF A DWELLING AND SENTENCE OF A TERM OF TWENTY-FIVE YEARS WITH TEN YEARS TO SERVE AND *576 FIFTEEN YEARS SUSPENDED; SMITH ON COUNT TWO OF BURGLARY OF A DWELLING AND SENTENCE OF TEN YEARS WITH NO YEARS TO SERVE AND TEN YEARS SUSPENDED; SMITH ON COUNT THREE OF ARMED ROBBERY AND SENTENCE OF TEN YEARS WITH NO YEARS TO SERVE AND TEN YEARS SUSPENDED; AND SMITH ON COUNT FOUR OF ARMED ROBBERY AND SENTENCE OF TEN YEARS TO SERVE IS AFFIRMED. COSTS OF THIS APPEAL ARE TAXED TO TALLAHATCHIE COUNTY.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, LEE, MOORE, PAYNE, AND THOMAS, JJ., CONCUR. IRVING, J., CONCURS IN RESULT ONLY.