BRIDGES, J.,
for the Court.
¶ 1. The grand jury of Hinds County indicted James Hackett and Frederick Perry on five counts of aimed robbery. Hackett went to trial on August 4, 1998, without Perry, who was tried separately. Hackett’s trial continued on August 5, without Hackett, as he fled the court’s jurisdiction. The jury convicted him in absentia on all five counts.
¶ 2. Almost two years later, Hackett returned to the court’s jurisdiction for sentencing following his arrest in Memphis. The court sentenced Hackett to forty years imprisonment on each count, to run concurrently. Between conviction and sentencing, Hackett, through his attorney, had filed a motion for JNOV and a new trial, which was denied. Appeal was denied on those motions until sentencing and a final judgment had been entered. Hack-ett perfected his appeal following sentencing.
STATEMENT OF ISSUES
I. DID THE COURT ERR IN DENYING HACKETT’S MOTION TO SUPPRESS IDENTIFICATION EVIDENCE ARISING FROM A SHOW-UP?
II. DID THE COURT ERR IN ADMITTING OFFICER BUTLER’S TESTIMONY CONCERNING IDENTIFICATION OF HACK-ETT BY THE ROBBERY VICTIMS DURING THE SHOW-UP?
III. DID THE COURT ERR IN DENYING HACKETT A PARTIAL DIRECTED VERDICT FOR *1081 THE ROBBERY OF KATHERINE AND TIM HARRELL?
IV. DID THE COURT ERR IN OVERRULING HACKETT’S OBJECTION TO THE STATE’S CLOSING ARGUMENT?
FACTS
¶ 3. On October 24, 1996, between 7:00 and 7:30 p.m., three armed men entered the Hairstyles Unlimited Salon and robbed all inside at gunpoint. At least one of the gunmen wore a mask. One of the robbers wore a striped shirt, jacket, and dark pants.
¶ 4. About thirty minutes later, James Hackett and Frederick Perry were pulled over for speeding several blocks away. The car fit the description of the getaway car. As they stopped, a third person jumped out of the car and escaped the police. The police found property reported stolen during the robbery in the car, and arrested Hackett and Perry.
¶ 5. The police brought Hackett and Perry to the salon in the backseat of a patrol car, handcuffed. Several of the victims, including Johnny Taylor, the proprietor, and James McNair, his employee, identified Hackett and Perry as two of the robbers, based largely on their clothes. The witnesses identified Hackett from his striped shirt, jacket, and dark pants. Both Hackett and Perry were indicted for armed robbery.
ANALYSIS
I.DID THE COURT ERR IN DENYING HACKETT’S MOTION TO SUPPRESS IDENTIFICATION EVIDENCE ARISING FROM A SHOW-UP?
¶ 6. Even impermissibly suggestive pre-trial identification does not preclude an in-court identification by an eyewitness who viewed the suspect at the procedure “unless: (1) from the totality of the circumstances surrounding it, (2) the identification was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification.” Buggs v. State, 754 So.2d 569, 574 (¶ 22) (Miss.Ct.App.2000) (citations omitted). There are five factors we examine to find whether these standards have been met:
1. Opportunity of the witness to view the accused at the time of the crime;
2. The degree of attention exhibited by the witness;
3. The accuracy of the witness’s prior description of the criminal;
4. The level of certainty exhibited by the witness at the confrontation;
5. The length of time between the crime and the confrontation.

Id.

¶ 7. Treating the factors individually:
1. The salon was well lit at the time of the crime, and the robbery took about five minutes.
2. The witnesses testified that they were individually confronted by two of the robbers, and spent most of their time observing them.
3. Johnny Taylor identified Hackett primarily from clothes he wore during the robbery, as his face was covered.
4. The witnesses exhibited absolute certainty that the two suspects were two of the robbers.
5. Less than an hour elapsed between the crime and the confrontation.
These factors are to be weighed on a case by case basis; this Court should determine whether taken as a whole these factors “give rise to a very substantial likelihood of misidentification.” York v. State, 413 So.2d 1372, 1383 (Miss.1982).
*1082 ¶ 8. The show-up was highly suggestive; Haekett and Perry were cuffed and seated in the back of a police cruiser when the witnesses identified them. Yet there are sufficient indicia of reliability to withstand any suggestion of impropriety: the personal property stolen at the hair salon, including the billfolds of Taylor and Harrell, was recovered from the car in which Haekett and Perry were stopped. A third man fled the car after it stopped, but before the police approached. And, Haekett and Perry met the description the police had for the robbery suspects.
¶ 9. For these reasons, we find that the show-up, although highly suggestive, was not impermissibly suggestive enough to present a substantial likelihood of irreparable misidentification, and we affirm.
II. DID THE COURT ERR IN ADMITTING OFFICER BUTLER’S TESTIMONY CONCERNING IDENTIFICATION OF HACK-ETT BY THE ROBBERY VICTIMS DURING THE SHOW-UP?
¶ 10. Hearsay is an oral or written assertion or assertive act, other than one by the declarant while testifying, offered in evidence to prove the truth of the matter asserted. M. R E. 801. Hearsay is generally not admissible. M.R.E. 802. The Mississippi Supreme Court has consistently held that the testimony of officers concerning the results of their investigation is inadmissible hearsay, which upon admission, constitutes reversible error. Bridgeforth v. State, 498 So.2d 796, 800 (Miss.1986).
¶ 11. Officer Stanley Butler, one of the two officers who arrested Haekett and Perry, brought Haekett and Perry back to the Hairstyles Unlimited Salon to perform a show-up. Butler testified that Haekett was identified by Johnny Taylor, whom the State had called earlier, and by Tim Harrell, who did not testify, at the show-up. Butler’s testimony was hearsay, and since it does not fall under any hearsay exceptions, should not have been admitted.
¶ 12. The court erred by admitting Butler’s hearsay testimony; because the defendant was not prejudiced by the admission of the hearsay, reversal of the conviction and sentence is unwarranted. The Mississippi Supreme Court has held that no grounds for reversal are presented by the admission of hearsay testimony which is merely cumulative. Jones v. State, 606 So.2d 1051, 1057 (Miss.1992). Butler testified as the final State witness, and his testimony served a merely cumulative purpose to Taylor’s identification. Butler’s testimony compares favorably with the testimony of Dr. Hampton in Jones, where Hampton’s testimony, confirming the identification of the defendant, was erroneously admitted:
The record shows that M.J. identified Jones as the perpetrator and that Kathy Booth testified, without objection, that M.J. identified Jones to her as the perpetrator. In light of these identifications of Jones as the perpetrator, the admission of Dr. Hampton’s testimony is merely cumulative. It told the jury nothing that M.J. and Kathy Booth did not also tell them. The error is harmless.
Jones v. State, 606 So.2d at 1057.
¶ 13. The admission of Butler’s hearsay testimony thus constitutes harmless error.
III. DID THE COURT ERR IN DENYING HACKETT A PARTIAL DIRECTED VERDICT FOR THE ROBBERY OF KATHERINE AND TIM HARRELL?
¶ 14. A motion for a directed verdict is considered as a motion for a judgment notwithstanding the verdict (JNOV); *1083 the evidence is construed most favorably to the non-moving party:
In passing upon a motion for a directed verdict, the trial judge must accept as true all evidence favorable to the State, including any reasonable inferences that' may be drawn from that evidence, and if there exists sufficient evidence to support a verdict of guilty, the motion for a directed verdict should be overruled. This Court will reverse only where “reasonable and fair-minded jurors could only find the accused not guilty.”
Johnson v. State, 642 So.2d 924, 927 (Miss.1994) (citations omitted).
¶ 15. Accordingly, the court properly considered the evidence before it: the Harrells were present at the robbery; two of the victims positively identified Hackett as one of the three men accused of the crime; the Harrells handed over their personalty to the robbers; and the police recovered some of their personalty from the car in which Hackett was found. Taken together, and absent any explanation from the defense, the court had no choice but to accept these facts as true for purposes of the motion for a directed verdict, and consequently deny that motion.
IV. DID THE COURT ERR IN OVERRULING HACKETT’S OBJECTION TO THE STATE’S CLOSING ARGUMENT?
¶ 16. Hackett asserts that the prosecution improperly commented on his standing silent. This final allegation is extremely serious:
When an accused exercises his or her constitutional right not to testify, the circuit judge must see that the State makes no direct or indirect comment on this fact. Though painful, the responsibility and duty of a circuit judge when such a comment is made is to declare a mistrial on the spot. Such celerity on the circuit judge’s part will not only have a salutary effect, but promote judicial economy in sparing this Court the task of the inevitable reversal.
Butler v. State, 608 So.2d 314, 318 (Miss.1992) (citations omitted).
¶ 17. The State came very near the line when it commented on the lack of a defense. The objectionable language follows: “And in creating diversion you try to attack everybody else. The last thing you do is own up to it. The last thing you do is to take responsibility.”
¶ 18. Hackett asserts that this constitutes an impermissible comment on his decision to stand silent. But this is clearly distinguishable from commenting on the defendant’s refusal to take the stand. “Th[e Mississippi Supreme Court] found that ‘[t]he comments in the case at bar [were] comments on the defense presented, or lack thereof, and not comments on the failure to testify,’ and held the prosecutor’s statement did not require reversal.” Ladner v. State, 584 So.2d 743, 754 (Miss.1991) (citations omitted). In Ladner, the prosecutor said:
The fifth thing, and the last element that we have to prove, is that the actions of the defendant were not done in necessary self-defense. I don’t believe that there’s been any testimony that he acted in self-defense in the case. It’s clear that that element we’ve met. There’s no showing of self-defense in this case. Then it says: If you so believe from the evidence in this case beyond a reason- ' able doubt you shall find the defendant guilty of capital murder. If the State has failed to prove any one of these five elements, then you can’t do it.
Id. The court displayed concern over the words “any testimony,” but found that the State had not commented on Ladner’s failure to testify.
*1084 ¶ 19. The issue before this Court is a serious one indeed, and Mississippi law on this matter is well settled:
“It was competent for the district attorney to comment on the weight and worth of what was in evidence, but he also had the duty to ... very carefully refrain from making any remark which directly or by insinuation focused the jurors’ attention ... to the fact that Butler did not take the stand.”
Butler, 608 So.2d at 318.
¶ 20. As an officer of the court, the district attorney is held scrupulously to this duty. It is quite possible that otherwise good convictions will suffer reversal in this Court if the State does not hold more closely to the line. It is only because the evidence is so overwhelmingly in favor of the State’s case that this prosecution survives this test. While there is error here, the overwhelming weight of the evidence negates the State’s comment on Hackett’s defense, rendering the error harmless.
CONCLUSION
¶ 21. Hackett raises several important issues in his appeal; in particular, he alleges that he was subjected to an impermissi-bly suggestive show-up procedure, and that the State referred to his silence at trial impermissibly. Unfortunately for Hackett, the evidence to support these allegations is thin, since even impermissibly suggestive show-ups can pass constitutional muster if they are close enough in time to the crime and have sufficient other indi-cia of reliability. As far as objectionable reference to Hackett’s silence at trial, the State held itself within the bounds of the law, commenting only on Hackett’s defense strategy, which attempted to shift blame on the police and discredit the eyewitnesses. Hackett’s absence severely handicapped his trial strategy, but that is the risk that all who flee justice in the middle of a trial will face in Mississippi.
¶ 22. We affirm the judgment of the Hinds County Circuit Court.
¶ 23. THE JUDGMENT OF THE CIRCUIT COURT OF HINDS COUNTY OF CONVICTION OF FIVE COUNTS OF ARMED ROBBERY AND SENTENCES OF FORTY YEARS ON EACH COUNT TO RUN CONCURRENTLY IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS IN THIS APPEAL ARE ASSESSED TO HINDS COUNTY.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., THOMAS, LEE, IRVING, MYERS, CHANDLER AND BRANTLEY, JJ„ CONCUR.