LEE, P.J.,
for the Court.
FACTS AND PROCEDURAL HISTORY
¶ 1. Karl Merchant works as a detective with the Meridian Police Department and was assigned to the East Mississippi Drug Task Force. As part of his task force duties, he assisted in undercover operations. On October 23, 2002, the task force was working with a confidential informant and self-described crack addict named Willie Pearl Horne. Horne was searched by the task force agents and equipped with a body wire. The task force equipped Merchant’s van with video and surveillance equipment. Another undercover agent, Steve Jackson, was supplied with $200 to purchase drugs. Jackson also wore a body wire.
¶ 2. Jackson and Horne went to the Quail Run Apartments in Quitman, Mississippi. While the duo were in the Quail Run parking lot, Horne recognized Jessie Bumpers and waved for Bumpers to approach the vehicle. Horne introduced Bumpers to Officer Jackson as a “cousin from out of town.” Horne then asked Bumpers if Bumpers knew of anywhere Horne and Jackson “could get some drugs.” Bumpers indicated a black male who was sitting on the steps at the apartment complex, who was later identified as Tarjarin Moore. Moore would not approach the vehicle, so Horne took twenty dollars from Jackson, walked into an alleyway with Moore, and exchanged the twenty dollars for drugs.
¶ 3. Horne then gave Jackson the drugs, who secured the substance and turned the drugs over to another agent, Gartell Willis. Jackson identified the seller from a photograph on the day of the sale. Moore was arrested for the sale of cocaine within 1,500 feet of a church. At trial, Jackson identified Moore in court. Horne’s testimony corroborated Jackson’s testimony, and Horne testified that she purchased drugs from Moore. Bumpers also testified that she witnessed Moore and Horne exchange money for the cocaine.
¶ 4. Moore was convicted of selling cocaine within 1,500 feet of at church, and sentenced to ten years in the custody of the Mississippi Department of Corrections on July 18, 2003. Moore made a motion for a new trial, arguing that one of the jurors did not respond to a question in voir dire. During voir dire, defense counsel asked the prospective jurors if any of them had been the victim of the sale of unlawful drugs. The jurors were also asked if any of them had any condition that would prevent them from listening attentively to the evidence at trial. Juror Dorothy Lindsay did not respond to either question. After trial, Moore’s attorney learned that Lindsay was completely deaf in her left ear. Moore argued that had Lindsay answered the questions during voir dire, Moore would have struck her from the jury. The court denied Moore’s motion for a new trial.
*81 ¶ 5. It is from this denial and his conviction that Moore appeals, arguing the following seven assignments of error: (1) a prospective juror’s failure to disclose her drug use and hearing problem prevented the defendant from exercising his challenges for cause and/or peremptory challenges; (2) the trial court erred in excluding the testimony of Moore’s witness where the State did not seek a continuance or a mistrial; (3) the one-photograph lineup from which Officer Jackson identified Moore was impermissibly suggestive; (4) Officer Jackson’s in-court identification of Moore did not have an independent basis; (5) Horne’s in-court identification of Moore was impermissibly suggestive and lacked an independent basis; (6) the trial court’s sentence of Moore was so harsh that it is cruel and unusual; and (7) the cumulative errors at trial denied Moore of his right to a fair trial.
¶ 6. Finding that Moore’s contentions lack merit, we affirm the judgment of the circuit court.
STANDARD OF REVIEW
¶ 7. Our scope of review regarding a juror’s failure to respond to questions in voir dire is provided in Odom v. State, 355 So.2d 1381, 1383 (Miss.1978).
A prospective juror’s failure to respond to questions during voir dire does not warrant this Court’s granting a defen-danVappellant a new trial unless the question propounded to the juror was (1) relevant to the voir dire examination; (2) ... unambiguous; ... (3) ... the juror had substantial knowledge of the information sought to be elicited ... [and (4)] prejudice ... in selecting the jury could reasonably be inferred from the juror’s failure to respond.
¶ 8. On the issue of whether to suppress identification based on a photographic display, our scope of review is provided by the Mississippi Supreme Court in York v. State, 413 So.2d 1372, 1378 (Miss.1982):
[W]e hold that each case must be considered on its own facts, and that convictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable mis-identification.
¶ 9. Regarding in-court identification by a witness following a pretrial photographic identification, Buggs v. State, 754 So.2d 569(¶ 20) (Miss.Ct.App.2000), provides that a reviewing court may not disturb the ruling of the trial judge unless there is an absence of “substantial credible evidence supporting it.” The standard of review when a trial court institutes sanctions for discovery abuses is “whether the trial court abused its discretion in its decision.” Gray v. State, 799 So.2d 53, 60(¶ 26) (Miss.2001) (internal citations omitted). Finally, regarding a sentence within the statutory guidelines, “it is well settled that the imposition of a sentence is within the discretion of the trial court and this Court will not review the sentence, if it is within the limits prescribed by statute.” Ivory v. State, 840 So.2d 755, 759(¶ 10) (Miss.Ct.App.2003).
I. DID THE TRIAL COURT ERR IN DENYING MOORE’S MOTION FOR A NEW TRIAL BASED UPON LINDSAY’S FAILURE TO RESPOND TO QUESTIONS IN VOIR DIRE?
¶ 10. The rule of law regarding a prospective juror’s failure to respond to questions during voir dire was enunciated in Odom, 355 So.2d at 1383.
A prospective juror’s failure to respond to questions during voir dire does not *82 warrant this Court granting a defendant/appellant a new trial unless the question propounded to the juror was (1) relevant to the voir dire examination; (2) ... unambiguous; ... (3) ... the juror had substantial knowledge of the information sought to be elicited ... [and (4)] prejudice ... in selecting the jury could reasonably be inferred from the juror’s failure to respond.
Id. at 1383. See also Chase v. State, 645 So.2d 829, 847 (Miss.1994); Myers v. State, 565 So.2d 554, 558 (Miss.1990).
¶ 11. Moore contends that Lindsay did not respond to two questions during voir dire. First, Moore contends that Lindsay did not respond when asked if she had been the victim of a drug-related crime. Second, Lindsay did not respond when defense counsel asked if any of the jurors had any conditions that would prevent them from listening attentively to the testimony. Moore argues that after the trial, defense counsel discovered that Lindsay had previously used crack cocaine and also had a hearing problem. Addressing the Moore’s contention regarding drug-related crime, we note that Moore does not specify which question regarding drug use Lindsay failed to answer.
¶ 12. During voir dire, the State asked the following question:
Is there anybody — and I am not going to argue with you. Some people feel that drugs are a victimless crime and you are abusing your own body; therefore, the government or the State shouldn’t be involved. I am not going to argue with you. But if you feel like it is not worth your time or shouldn’t be illegal, I just need to know that, because that is what we are trying to prove, that it is, in fact, illegal and the defendant did that. Anybody feel that way?
¶ 13. No juror responded to this question. Later in the voir dire, Ms. Ross, Moore’s counsel, asked the following question: ’
Earlier Ms. Howell told you that the State was going to call certain witnesses and she told you that they were going to rely very heavily upon the law enforcement officers. But there are other witnesses in this case. Now, is there anyone here who has anyone in their family who has been addicted to drugs or a family member or close friend who has been the victim of drug abuse?
¶ 14. To this question, Jurors 32, 33, and 45 responded that they had relatives who were involved in drugs to some extent or another. Ms. Ross also asked the following question:
Have any of you ever been the victim of a drug-related crime; that is, maybe someone attempted to rob you, they assaulted you, they broke into your home to support their drug addiction?
¶ 15. No prospective juror responded to this question.
¶ 16. This Court is not inclined to agree that Moore has shown that the question to which Lindsay refused to respond was unambiguous as required by Odom. To say the least, Moore’s questions regarding drug-related crime did not address a juror’s drug use. These questions were, at best, ambiguous regarding drug use by the jurors. Additionally, Moore has not shown any prejudice resulting in Lindsay’s service on the jury.
¶ 17. Moore also contends that had he known of Lindsay’s lack of hearing in her left ear, he would have struck her from the jury. Moore contends that Lindsay failed to respond to the following question on voir dire:
Is there anyone here who cannot listen attentively to the evidence and make determinations of credibility; that is, *83 you may be getting ready to go on your family vacation, you may have a child at summer camp, you may just want to be doing something else today and would rather not serve or spend your time in the courtroom with us? Is there anyone who has anything that would cause them not to be able to listen attentively to the evidence in this case?
¶ 18. No juror responded to this question by Ms. Ross.
¶ 19. Moore argues that had he know that Lindsay was deaf in her left ear, he would have removed her from the jury pool. Like the questions regarding drug-related crimes, we do not agree with Moore’s assertion that this question is unambiguous. Clearly Ms. Ross’s question is referring to personal distractions outside of the courtroom which would prevent the jurors from paying attention to the evidence presented to them at trial. The question is far removed from inquiring if any of the jurors had a physical disability which would prevent one of them from serving effectively. Furthermore, assuming arguendo that the question was not ambiguous, we fail to see that Moore has shown that he suffered any prejudice from Lindsay’s presence. At the hearing on the motion for a new trial, Lindsay testified that she heard and understood everything that occurred during the trial, testifying “I understand everything that is going on. I made sure that I sit there, I made sure that I listen real good loud and clear. Because the microphone was real loud, I could hear real good.”
¶20. We find that this assignment of error lacks merit.
II. DID THE TRIAL COURT ERR IN EXCLUDING TESTIMONY OF MOORE’S ALIBI WITNESS?
¶ 21. Moore argues that the trial court erred in excluding the testimony of Tonya Dubose. Moore argues that Dubose’s testimony would have allowed Moore to present a defense of misidentification, as well as an alibi defense. The State argues that the trial court properly excluded Dubose’s testimony because Moore did not disclose his intention to call Dubose as a witness.
¶ 22. The standard of review when a trial court institutes sanctions for discovery abuses is “whether the trial court abused its discretion in its decision.” Gray v. State, 799 So.2d 53, 60(¶ 26) (Miss.2001) (internal citations omitted). On appeal, this Court is limited to reversing a trial court’s decision upon finding an abuse of discretion. Id. (citing Conley v. State, 790 So.2d 773, 782(¶20) (Miss.2001)).
¶ 23. URCCC 9.04 provides in pertinent part as follows:
If during the course of the trial, the prosecution attempts to introduce evidence which has not been timely disclosed to the defense as required by these rules, and the defense objects to the introduction for that reason, the court shall act as follows:
1. Grant the defense a reasonable opportunity to interview the newly discovered witness, to examine the newly produced documents, photographs or other evidence; and
2. If, after such opportunity, the defense claims unfair surprise or undue prejudice and seeks a continuance or mistrial, the court shall, in the interest of justice and absent unusual circumstances, exclude the evidence or grant a continuance for a period of time reasonably necessary for the defense to meet the non-disclosed evidence or grant a mistrial.
The trial court is required to follow the same procedure for discovery violations by the defense.
*84 ¶ 24. After two o’clock on the second day of trial, Moore attempted to call Du-bose to the stand, and the State immediately objected, arguing that it had not received any summary or statement of Du-bose’s testimony. Ms. Young, the assistant district attorney, further stated that she did not have any knowledge that Du-bose was pertinent to Moore’s case in any respect. Ms. Ross, Moore’s attorney, argued that although she did not supply the State with a summary of Dubose’s expected testimony, she supplied the State with a copy of the subpoena. Ms. Young responded by renewing her objection, and then stated that she had “no desire, whatsoever, to interview [Dubose] at 2:25 the second day of this trial, Your Honor.” The trial court ruled that because Ross had not timely produced Dubose’s name and a summary of her oral and/or written statements to the State, Dubose would not be permitted to testify.
¶ 25. Ross then made a proffer of Du-bose’s expected testimony: that Dubose is Moore’s sister; that Dubose and Moore have a brother named Tramaine Moore; that Dubose lives at the Quail Run Apartments; that she was depicted in the videotape of the undercover drug sale; that her brother Tramaine Moore was living with her at Quail Run at the time of the drug sale; that Tramaine Moore and Tarjarin Moore have similar physical characteristics; and that on the date in question Tarjarin Moore was disabled; therefore, he is not the person captured on the police video tape of the surrounding area during the transaction.
¶26. URCCC 9.04 clearly states the procedure to be followed in the event either side fails to timely produce trial evidence. Upon objection by the side which lacked notice of the evidence, the court should grant that party the opportunity to interview the witness. URCCC 9.04 1(1). After the party has reviewed the witness or information, the party must claim either unfair surprise or undue prejudice and choose one of two courses of action: request a continuance or request a mistrial. The possibility of a continuance or a mistrial never became an issue, however, because the State refused to interview the witness, and the trial court never broached the possibility that the State would interview the witness. After Moore made a proffer of Dubose’s testimony, the trial court stated that Dubose qualified as an alibi witness under URCCC 9.05. This rule provides in pertinent part as follows:
Upon the written demand of the prosecuting attorney stating the time, date, and place at which the alleged offense was committed, the defendant shall serve within ten days, or at such other time as the court may direct, upon the prosecuting attorney a written notice of the intention to offer a defense of alibi, which notice shall state the specific place or places at which the defendant claims to have been at the time of the alleged offense and the names and addresses of witnesses upon which the defendant intends to rely to establish such alibi.
The rule further provides that the failure of either party to comply with this rule may result in sanctions as the court deems proper, including excluding the testimony of the undisclosed witness. URCCC 9.05.
¶ 27. The trial court did not err in suppressing Dubose’s testimony, for under URCCC 9.05, the defense must disclose written notice of its intent to offer an alibi defense upon written demand of the prosecuting attorney. In the case sub ju-dice, the State properly submitted to Moore’s attorney a written request for notice of an alibi defense. Although we find that the trial court did not err in suppressing Dubose’s testimony for Moore’s failure to disclose under Rule 9.05, the court did *85 err in not following the procedural directive of URCCC 9.04 prior to ruling that the witness would not testify. The State refused to interview the witness as provided in Rule 9.04, and the State should not be allowed to benefit from its failure to follow the procedural guidelines of Rule 9.04. We say this to make clear that Rule 9.04 provides procedural guidelines which should be followed to assist the surprised party in the event the party is faced with new evidence or testimony at trial. However, in this instance, any error made by the trial court in not following Rule 9.04 was harmless error, because the substance of Dubose’s testimony rendered her an alibi witness, and the trial court clearly had the discretion to suppress Dubose’s testimony under URCCC 9.05. This finding of harmless error should not be construed to require a Box analysis for alibi witnesses, for it is clear that under URCCC 9.05, procedures relating to alibi witnesses are addressed differently from other discovery matters. Ford v. State, 862 So.2d 554, 556(¶ 8) (Miss.Ct.App.2003).
¶ 28. Because Dubose’s testimony should have been disclosed prior to trial as an alibi witness under URCCC 9.05, the trial court was within its discretion in suppressing her testimony. This assignment of error lacks merit.
III. WAS THE PHOTOGRAPHIC LINE-UP IMPERMISSIBLY SUGGESTIVE?
IV. DID OFFICER JACKSON HAVE AN INDEPENDENT BASIS FOR HIS IN-COURT IDENTIFICATION OF MOORE?
¶ 29. In two separate assignments of error, Moore argues that the photographic line-up from which Officer Jackson identified him was so impermissi-bly suggestive that Officer Jackson lacked an independent basis for his in-court identification. We shall consider these errors together. In reviewing these issues we follow the law as enunciated in York v. State, 413 So.2d 1372, 1374 (Miss.1982).[1] In Bankston v. State, 391 So.2d 1005, 1008 (Miss.1980), the supreme court held that showing a victim only one photograph of a man with a mustache, when a moustache was the only distinctive feature recalled by the victim, was impermissibly suggestive. “A series of photographs where one is ‘conspicuously singled out in some manner from others ... is impermissibly suggestive.’ ” York, 413 So.2d at 1383. Clearly, showing a witness a single photograph of the defendant could be impermissibly suggestive, however our analysis does not cease at this point. An impermissibly suggestive pre-trial identification does not preclude in-court identification by an eyewitness who viewed the suspect at the procedure “unless: (1) from the totality of the circumstances surrounding it, (2) the identification was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification.” York, 413 So.2d at 1383, citing Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967) (overruled on other grounds); Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968). “Even if testimony is proffered of the out-of-court identification itself, the same standard exists as to the above, with the omission of the word ‘irreparable.’ ” York, 413 So.2d at 1383. In determining whether these standards are fulfilled, the court may consider the following factors:
*86 the opportunity of the witness to view the criminal at the time of the crime, the witness’ degree of attention, the accuracy of the witness’ prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation.
York, 413 So.2d at 1383 (citing Neil v. Biggers, 409 U.S. 188, 199, 98 S.Ct. 375, 34 L.Ed.2d 401 (1972)). Finally, “[e]ven though the pretrial identification is imper-missibly suggestive, [the defendant] must still show the conduct gave rise to a very substantial likelihood of irreparable mis-identification.” York, 413 So.2d at 1383.
¶ 30. Officer Jackson was present in the unmarked van at the time of drug sale. Jackson testified that the sale occurred around two o’clock in the afternoon in broad daylight. At the hearing on the motion to suppress, Jackson testified that he had obtained “a very good look” at Moore, and that he was “100% certain” that the person he identified the photograph was the man involved in the drug sale. Jackson wrote a report of the transaction within hours of the sale. He included a description of Moore in his report: “Tarjarin had on a black long sleeve shirt, denim blue jeans with black house shoes on. Tarjarin was about 5'll" or 6'0" about 230-235 pounds in weight.” Jackson further wrote that he identified the black male as Tarjarin Rahiem Moore from a photo taken from the Clarke County Sheriffs Department Detention Center. Although Jackson’s report was typed, it bears a handwritten notation at the end of the report to the effect that Moore never left Jackson’s sight during the transaction. This notation was initialed by Jackson.
¶ 31. Clearly there is substantial credible evidence supporting the trial court’s ruling that there was not a substantial likelihood of misidentification. Jackson observed Moore for twenty-five minutes at the Quail Run Apartments, Jackson clearly paid close attention to detail in describing Moore’s appearance, and Jackson was “100%” certain of his identification. Although a single-photographic line-up verges on being impermissibly suggestive, there is substantial evidence in the record to indicate that there was no substantial likelihood of irreparable misidentification. Accordingly, this assignment of error lacks merit.
V. WAS HORNE’S IN-COURT IDENTIFICATION OF MOORE IMPER-MISSIBLY SUGGESTIVE?
¶ 32. Moore argues that Horne’s identification of Moore was also impermissibly suggestive. Moore argues that the trial court erred in not conducting an on-the-record consideration of the identification factors before permitting Horne to testify. An in-court identification is not subject to suppression unless it is shown to have been tainted by some suggestive out-of-court identification. Smith v. State, 430 So.2d 406, 407 (Miss.1983). Moore objected to the State’s request that Horne “look through the courtroom” to see if the man who sold her the drugs was present. Moore argued that the defense had “not been provided with any identification where Ms. Willie Pearl Horne has identified the defendant in the case before today.” The attorney for the State responded that she had no idea if Horne could identify the person who sold her the drugs, she merely wanted to give Horne to opportunity to identify the man if she were able. Clearly, if Horne had not previously identified Moore, her in-court identification is not subject to suppression due to a previous, out-of-court, suggestive identification. There was no prior identification to taint Horne’s in-court identification. This assignment of error is without merit.
*87 VI. IS MOORE’S SENTENCE SO HARSH THAT IT CONSTITUTES CRUEL AND UNUSUAL PUNISHMENT?
¶ 33. As a general rule, a sentence will not disturbed on appeal so long as it does not exceed the maximum term allowed by statute. Stromas v. State, 618 So.2d 116, 122 (Miss.1993). Moore argues under Davis v. State, 724 So.2d 342 (Miss.1998), his sentence should be remanded for reconsideration, and this Court should require the trial court to make a finding as to why Moore received a ten-year sentence when Jessie Mae Bumpers, who facilitated the sale, received a lighter sentence. We are not inclined to agree. While it is true that the court in Davis remanded for re-sentencing, in Davis the record was devoid of support for the sixty-year sentence the defendant received for selling cocaine. Unlike Davis, a pre-sentencing report was included in the record. Furthermore, Moore’s ten year sentence is considerably less than the thirty year maximum provided in Mississippi Code Annotated Section 41-29-139, and his sentence is well within the enhancement guidelines provided in Section 41-29-143, which would allow a sentence up to three times the sentence imposed under 41-29-139. This assignment of error lacks merit.
VIL DID THE CUMULATIVE ERRORS IN THIS CASE EFFECTIVELY DENY MOORE HIS RIGHT TO A FAIR TRIAL?
¶ 34. Finding no merit to any of Moore’s assertions, there is no cumulative error to review. Accordingly, we affirm the judgment of the circuit court.
¶ 35. THE JUDGMENT OF THE CIRCUIT COURT OF CLARKE COUNTY OF CONVICTION OF SALE OF COCAINE WITHIN 1,500 FEET OF A CHURCH AND SENTENCE OF TEN YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AND PAY A $5,000 FINE, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO CLARKE COUNTY.
BRIDGES, P.J., IRVING, MYERS, CHANDLER, GRIFFIS, BARNES AND ISHEE, JJ., CONCUR. KING, C.J., CONCURS IN RESULT ONLY.

. York provides two lines of analysis regarding pre-trial identifications: analysis protecting the defendant's Fourteenth Amendment right to due process and analysis protecting the defendant’s Sixth Amendment right-to-counsel. Nicholson v. State, 523 So.2d 68, 71 (Miss.1988). Because Moore raises only Fourteenth Amendment issues in his brief, we do not consider any potential Sixth Amendment implications in the identification.